## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SAP AMERICA, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>VALTRUS INNOVATIONS LIMITED,<br>KEY PATENT INNOVATIONS LIMITED,<br>and PATENT PLATFORM SERVICES,<br>LLC,<br><br>        Defendants. | Civil Action No.   24-cv-00756-GBW<br><br>**JURY TRIAL DEMANDED**<br><br>██████████<br><br>**PUBLIC VERSION FILED:  July 18, 2024** |

## ORIGINAL COMPLAINT

Plaintiff SAP America Inc. ("SAP"), based on personal knowledge as to all acts or events that it has undertaken or witnessed, and upon information and belief as to all others, files this Original Complaint against Defendants Valtrus Innovations Limited ("Valtrus"), Key Patent Innovations Limited ("KPI"), and Patent Platform Services, LLC ("PPS") (collectively, "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1.      This action by SAP (1) seeks a determination that Defendants have violated the Delaware Consumer Fraud Act; (2) seeks a determination that Defendants have conspired to violate the Delaware Consumer Fraud Act; (3) seeks a determination that PPS knowingly and substantially assisted both KPI and Valtrus to violate the Delaware Consumer Fraud Act, and (4) seeks a determination that SAP does not infringe any enforceable claim of U.S. Patent Nos. 8,166,173 (the "'173 Patent"), 7,672,929 (the "'929 Patent"), 6,889,244 (the "'244 Patent"), 7,251,588 (the "'588 Patent"), 6,850,866 (the "'866 Patent"), 9,229,984 (the "'984 Patent"), 6,823,409 (the "'409 Patent"), 7,152,182 (the "'182 Patent"), 7,313,575 (the "'575 Patent"),

6,691,139 (the "'139 Patent"), 7,936,738 (the "'738 Patent"), and 6,871,264 (the "'264 Patent") (collectively, the "Patents-in-Suit").

## PARTIES & BACKGROUND

2.      Plaintiff SAP America, Inc. is a Delaware corporation, with a principal address of 3999 West Chester Pike, Newtown Square, Pennsylvania 19073. SAP America, Inc. is a wholly owned subsidiary of SAP SE and is contractually tasked with acting as the sole entity licensing SAP SE products in the United States.

3.      Upon information and belief, Defendant Valtrus Innovations Limited is an Irish company, located at the Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

4.      Upon information and belief, Defendant Key Patent Innovations Limited is an Irish company, located at the Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

5.      Upon information and belief, Defendant Patent Platform Services, LLC is organized in Delaware with its principal place of business at 7460 Warren Parkway, Suite 100, Frisco, Texas 75034.

6.      As represented by Valtrus, it is "the owner of an extensive portfolio of patents originating from Hewlett Packard Enterprise Company. Valtrus'[s] portfolio covers a range of products and technologies including servers, cloud and data centre management, memory, processors, WLAN, network analytics, power and many more related technologies. The portfolio includes patents whose use are ubiquitous in these areas. Valtrus is focused on licensing these patents to established players and new entrants in the applicable markets." (*See* https://www.valtrusinnovations.ie/).

7.      According to KPI, it "partners with leading technology companies to realize the potential of their patent assets." KPI purports to accomplish this goal by "using [KPI's] combination of technical, legal, and negotiation skills together with [KPI's] extensive licensing experience, [to] ensure that technology companies receive a significant return on their investment." (*See* https://www.keypatentinnovations.ie/). KPI provides these services by licensing its "Valtrus portfolio," comprising "a large number of significant patents issued worldwide covering a broad range of ubiquitous technologies." (*See* https://www.keypatentinnovations.ie/our-portfolio).

8.      On its website, PPS represents that it "is a premier provider of intellectual property licensing and consulting services including" but not limited to "[n]egotiation and closing of licensing deals[;] [p]atent asset management[;] [p]atent portfolio mining and licensing program development; [and] [m]anagement of strategic patent prosecution and litigation programs." (*See* https://www.patentplatformservices.com/about). Upon information and belief, PPS provides these services to both Valtrus and KPI.

9.      Upon information and belief, Valtrus purports to be the legal owner by assignment of the '173 Patent (entitled, "Inviting Assistant Entity into a Network Communication Session"), which is held in trust by Valtrus for the exclusive benefit of KPI.  A true and correct copy of the '173 Patent is attached as Exhibit A.

10.     Upon information and belief, Valtrus purports to be the legal owner by assignment of the '929 Patent (entitled, "Database Modification History"), which is held in trust by Valtrus for the exclusive benefit of KPI.  A true and correct copy of the '929 Patent is attached as Exhibit B.

11.     Upon information and belief, Valtrus purports to be the legal owner by assignment of the '244 Patent (entitled, "Method and Apparatus for Passing Messages Using Fault Tolerant

Storage System"), which is held in trust by Valtrus for the exclusive benefit of KPI. A true and correct copy of the '244 Patent is attached as Exhibit C.

12.     Upon information and belief, Valtrus purports to be the legal owner by assignment of the '588 Patent (entitled, "System for Metric Introspection in Monitoring Sources"), which is held in trust by Valtrus for the exclusive benefit of KPI. A true and correct copy of the '588 Patent is attached as Exhibit D.

13.     Upon information and belief, Valtrus purports to be the legal owner by assignment of the '866 Patent (entitled, "Managing Performance Metrics Describing a Relationship Between a Provider and a Client"), which is held in trust by Valtrus for the exclusive benefit of KPI. A true and correct copy of the '866 Patent is attached as Exhibit E.

14.     Upon information and belief, Valtrus purports to be the legal owner by assignment of the '984 Patent (entitled, "Parameter Expressions for Modeling User Defined Function Execution in Analytical Data Processing Systems"), which is held in trust by Valtrus for the exclusive benefit of KPI. A true and correct copy of the '984 Patent is attached as Exhibit F.

15.     Upon information and belief, Valtrus purports to be the legal owner by assignment of the '409 Patent (entitled, "Coherency Control Module for Maintaining Cache Coherency in a Multi-Processor-Bus System"), which is held in trust by Valtrus for the exclusive benefit of KPI. A true and correct copy of the '409 Patent is attached as Exhibit I.

16.     Upon information and belief, Valtrus purports to be the legal owner by assignment of the '182 Patent (entitled, "Data Redundancy System and Method"), which is held in trust by Valtrus for the exclusive benefit of KPI. A true and correct copy of the '182 Patent is attached as Exhibit J.

17.     Upon information and belief, Valtrus purports to be the legal owner by assignment of the '575 Patent (entitled, "Data Services Handler"), which is held in trust by Valtrus for the exclusive benefit of KPI. A true and correct copy of the '575 Patent is attached as Exhibit K.

18.     Upon information and belief, Valtrus purports to be the legal owner by assignment of the '139 Patent (entitled, "Recreation of Archives at a Disaster Recovery Site"), which is held in trust by Valtrus for the exclusive benefit of KPI. A true and correct copy of the '139 Patent is attached as Exhibit L.

19.     Upon information and belief, Valtrus purports to be the legal owner by assignment of the '738 Patent (entitled, "Fault Tolerant Systems"), which is held in trust by Valtrus for the exclusive benefit of KPI. A true and correct copy of the '738 Patent is attached as Exhibit M.

20.     Upon information and belief, Valtrus purports to be the legal owner by assignment of the '264 Patent (entitled, "System and Method for Dynamic Processor Core and Cache Partitioning on Large-Scale Multithreaded, Multiprocessor Integrated Circuits"), which is held in trust by Valtrus for the exclusive benefit of KPI. A true and correct copy of the '264 Patent is attached as Exhibit N.

21.     Upon information and belief, Valtrus obtained interest in the Patents-in-Suit, which are held in trust for the exclusive benefit of KPI as part of a set of agreements between Valtrus and Hewlett Packard Enterprise Development LP ("HPED"), a Texas limited partnership with its principal place of business in Houston, Texas, and Hewlett Packard Enterprise Company, a Delaware corporation with its principal place of business in San Jose, California (together with HPED, "HPE") in exchange for a series of payments ███████████████████████████ ███████████████████████████████████████████████████.

22.     Thereafter, on March 4, 2022, Defendants sent SAP SE a letter asserting that "[Valtrus's] preliminary analysis reveals that SAP is currently making, using, selling, or offering for sale products and services that infringe (directly or indirectly) one or more of the Valtrus patents." (Ex. G).  In its March 4, 2022 letter, Defendants included an exemplary list of SAP's products that allegedly infringe Valtrus's patents.  (*Id.*)  On September 7, 2022, Defendants sent SAP SE another letter again contending, "[a]t this time, our preliminary analysis reveals that SAP is currently making, using, selling, or offering for sale product and services that infringe (directly or indirectly) the Valtrus patents in the attached Table 1 shown with an exemplary of products and services that infringe one or more of its claims." (Ex. H).  Thereafter, on October 6, 2022, and November 1, 2022, Defendants made presentations to SAP regarding a list of SAP products that allegedly infringed Valtrus's patents (including the Patents-in-Suit), the valuation of Valtrus's patent portfolio, an offer to license the Valtrus-patent portfolio, and next steps to discuss Valtrus's purported infringement claim charts.  Throughout 2023 and into January 2024, SAP and Defendants engaged in additional conversations in which Defendants identified SAP products that they allege infringe Valtrus's patents, including the Patents-in-Suit.

23.     Upon information and belief, PPS acted as KPI's and Valtrus's licensing agent throughout 2023 and into January 2024. PPS communicated on behalf of KPI and Valtrus with SAP discussing various matters, including, but not limited to, infringement and invalidity of Valtrus's patent portfolio including the Patents-in-Suit, valuation of Valtrus's patent portfolio including the Patents-in-Suit, and offers to license Valtrus's patent portfolio including the Patents-in-Suit. Upon information and belief, PPS has a financial interest in KPI's and Valtrus's licensing revenue relating to the Patents-in-Suit and KPI's and Valtrus's broader portfolio.

24.     During those conversations throughout 2023 and into 2024, Defendants concealed the nature of Valtrus's agreements with HPE, including the true ownership status of the Patents-in-Suit and the consideration exchanged for the portfolio of patents obtained from HPE, including the Patents-in-Suit.

25.     Upon information and belief, Defendants licensed the portfolio obtained from HPE, including the Patents-in-Suit to numerous companies.  Defendants, however, also concealed the nature of these licensing agreements during their conversations with SAP.

26.     Rather, upon information and belief, Defendants have an established practice of concealing any consideration related to its patent portfolio from the prospective licensees with which it engages, such as SAP.  By doing so, Defendants hide the actual market value of its patents to extract licensing fees that far exceed that market value and are instead based on (1) the overall size or revenue of a licensing target, or (2) the avoidance of litigation expenses--neither of which is a valuation method for U.S. patent rights as recognized by any court in the United States.

27.     Upon information and belief, prior to Defendants' acquisition of the HPE portfolio patents, HPE offered groups of those patents—including those patents specifically identified as allegedly relevant to SAP—to other potential purchasers for amounts far less (even orders of magnitude less) than Defendants' licensing demands to SAP.

28.     In addition, while Defendants only identified a small subset of patents within the portfolio that could allegedly implicate SAP products and offerings, Defendants nonetheless only offered and would only discuss a portfolio-wide license, which necessarily includes patents as to which Valtrus lacks a good faith basis to allege infringement by SAP and for which SAP need not take a license.

29.    To provide additional time for Defendants to identify patents in Valtrus's portfolio on which Valtrus might have a good faith basis to allege infringement and to provide Defendants additional time to make reasonable licensing demands, SAP and Valtrus negotiated and entered into a standstill agreement dated October 18, 2023.  As part of those negotiations, SAP requested that the parties agree to exclude from any future dispute plainly improper or inconvenient venues, and rather agree that any future suit be bought in venues where both parties had active litigation. Valtrus refused.  Upon expiration of the standstill agreement, Valtrus sued SAP in the Eastern District of Texas, Marhsall Division—an inconvenient venue unconnected to any SAP product allegedly at issue in the parties' discussions.

## JURISDICTION

30.    This Court has subject matter jurisdiction over SAP's claims for declaratory judgment and the Delaware Consumer Fraud Act under 28 U.S.C. § 1331, 1332, 1338(a) and/or § 1367, and 2201-02.

31.    To the extent necessary, the amount in controversy exceeds $75,000.

32.    Upon information and belief, an actual and justiciable controversy exists between SAP and Defendants regarding whether SAP's products infringe the Patents-in-Suit as set forth herein.

33.    Upon information and belief, an actual and justiciable controversy exists between SAP and Defendants regarding whether Defendants have violated the Delaware Consumer Fraud Act as set forth herein.

34.    Upon information and belief, an actual and justiciable controversy exists between SAP and Defendants regarding whether Defendants engaged in civil conspiracy to violate the Delaware Consumer Fraud Act as set forth herein.

35.     Upon information and belief, an actual and justiciable controversy exists between SAP and PPS regarding whether PPS aided and abetted Valtrus in violating the Delaware Consumer Fraud Act as set forth herein.

36.     Upon information and belief, Valtrus, as trustee, purports to be the owner by assignment to the Patents-in-Suit, which are held in a bare trust for the exclusive benefit of KPI, as beneficiary. ███████████████████████████████████████████ ███ Upon information and belief, ████████████████████████████████ ████████████████████████████████████████. Upon information and belief, ████████████████████████████████████████ ████████████████████████████. Upon information and belief, ████████████████ ███████████████████████████████████████████████ ███████████████████. Upon information and belief, ████████████████████████ ████████████████████████

37.     Upon information and belief, PP Holdings is a Delaware limited liability company and the sole member of PP Licensing, a Delaware limited liability company with an office in Wilmington, Delaware. Upon information and belief, PP Licensing is the sole parent company and shareholder of KPI and the sole parent company of PPS, a Delaware limited liability company with an office located in Wilmington, Delaware. Upon information and belief, KPI and PPS entered into an agreement where PPS agrees to provide, for example, patent portfolio acquisition, monetization, licensing, and litigation services for KPI and Valtrus. Upon information and belief, KPI is the sole parent company of Valinvest, which is a Delaware limited liability company with an office in Wilmington, Delaware. Upon information and belief, Valtrus is KPI's wholly owned subsidiary.

38.     Upon information and belief, PP Licensing acquired three shares of KPI in exchange for $11.5 million, $20 million, and $19.5 million. Upon information and belief, ███ ████████████████████████████████████████████████████ Upon information and belief, KPI directed and approved all communications by PPS on behalf of KPI or Valtrus to negotiate and acquire the HPE Patent Portfolio from HPE.

39.     Upon information and belief, KPI and/or Valtrus and PPS, at the direction of KPI, issued demand letters and engaged in settlement negotiations with various Delaware companies for a license to the HPE Patent Portfolio. Upon information and belief, KPI and/or Valtrus and PPS, at the direction of KPI, licensed the HPE Patent Portfolio to various Delaware companies, which can or have sub-licensed the HPE Patent Portfolio to Delaware companies. Upon information and belief, KPI and/or Valtrus and PPS, at the direction of KPI, filed patent-infringement suits against Delaware companies asserting various claims of the HPE Patent Portfolio. Upon information and belief, Valinvest provided KPI with a capital injection in exchange for a beneficial share of the HPE Patent Portfolio, and KPI has used that capital injection in whole or in part to fund licensing and litigation expenses relating to the HPE Patent Portfolio, involving Delaware companies.

40.     Upon information and belief, Valtrus is an alter ego and/or agent of KPI. Upon information and belief KPI and Valtrus each have the same five directors—Angela Quinlan, Glen Gibbons, Mairead Lyons, Paul Riley, and Paul Seaman. Upon information and belief, Angela Quinlan, the Managing Director for both KPI and Valtrus, signs all documents on behalf of KPI and Valtrus. Upon information and belief, KPI and Valtrus have never negotiated at arms-length or in good faith as they share the same directors. Upon information and belief, KPI and Valtrus were incorporated on the same day. Upon information and belief, Valtrus has no employees. Upon

information and belief, Valtrus is grossly undercapitalized and insolvent as it had one dollar in total assets as of both December 31, 2021, and December 31, 2022. Upon information and belief, Valtrus uses the same address as KPI, the same office, the same facilities, the same phone number to conduct business, the same computer to conduct business, and the same Microsoft SharePoint to save files. Upon information and belief, KPI pays all bills directly for Valtrus and acquired the Patents-in-Suit for Valtrus. Upon information and belief, when Valtrus receives money from licensing the HPE Portfolio at the direction of KPI, Valtrus transfers the money out of its bank account to KPI's account.

41.     Upon information and belief, Valinvest, LLC ("Valinvest") is an alter ego and/or agent of KPI. Upon information and belief, ███████████████████████████. Upon information and belief, ████████████████████ Upon information and belief, ███████████████████████████████████ ████████████████████████.

42.     Upon information and belief, PPS is an alter ego and/or agent of KPI. Upon information and belief, PPS was created for the sole purpose of assisting and/or supporting KPI and/or Valtrus to, for example, monetize, license, and enforce the HPE Patent Portfolio. Upon information and belief, PPS shares employees and/or directors with KPI, including but not limited to, Paul Seaman and Paul Riley. Upon information and belief, KPI approves, controls, and/or directs all communications and/or actions by PPS in relation to, for example, monetizing, licensing, and enforcing the HPE Patent Portfolio.

43.     Upon information and belief, this Court has personal jurisdiction over Valtrus in this action. Personal jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(2) because (1) this case relates to Valtrus's assertions of patent infringement and therefore arises under federal

law; (2) Valtrus is an Irish corporation and lacks sufficient contacts with any state; and (3) Valtrus has sufficient contacts with the United States as a whole, directing its patent enforcement efforts toward various U.S. entities. For example, Valtrus has availed itself of various courts in the United States, asserting various claims for patent infringement. *Valtrus Innovations Ltd. v. Google LLC*, No. 3:22-cv-00066 (N.D. Tex. Jan. 10, 2022); *Valtrus Innovations Ltd. v. Google LLC*, No. 4:22-cv-00020 (N.D. Tex. Jan. 10, 2022); *Valtrus Innovations Limited v. AT&T Inc.*, No. 2:23-cv-00443-JRG (E.D. Tex. Sept. 27, 2023); *Valtrus Innovations Limited v. T-Mobile USA, Inc.*, No. 2:23-cv-00444-JRG (E.D. Tex. Sept. 27, 2023); *Valtrus Innovations Limited v. Verizon Commc'ns Inc.*, No. 2:23-cv-00445-JRG (E.D. Tex. Sept. 27, 2023); *Valtrus Innovations Limited v. Dawn Acquisitions LLC*, No. 2:24-cv-00142 (E.D. Tex. Feb. 27, 2024); *Valtrus Innovations Limited v. Digital Reality Trust, Inc.*, No. 2:24-cv-00139 (E.D. Tex. Feb. 27, 2024); *Valtrus Innovations Limited v. CyrusOne, LLC*, No. 2:24-cv-00259 (E.D. Tex. Apr. 17, 2024); *Valtrus Innovations Limited v. NTT Data Servs., LLC*, No. 2:24-cv-00361 (E.D. Tex. May 14, 2024). Upon information and belief, personal jurisdiction is also proper within this District because Valtrus (and its alter-egos, KPI and Valinvest) purposefully availed itself of the privilege of doing business in Delaware by acquiring its patents from HPE as well as negotiating and licensing its patents to companies that are incorporated in Delaware and/or registered to do and currently conducting business in Delaware. Upon information and belief, personal jurisdiction is also proper within this District because Valtrus has purposefully availed itself of the privilege of doing business in Delaware directly or indirectly through KPI, PPS, Valinvest, PP Holdings, PP Licensing, and/or other alter-egos, subsidiaries, parents, or agents; maintains pervasive, continuous, and systematic contacts with the State of Delaware through KPI, PPS, Valinvest, PP Holdings, PP Licensing, and/or other alter-egos, subsidiaries, parents, or agents; and conducts business in this District pertaining to the

Patents-in-Suit, including but limited to efforts to acquire as well as license or enforce the Patents-in-Suit through KPI, PPS, Valinvest, PP Holdings, PP Licensing, and/or other alter-egos, subsidiaries, parents, or agents.

44.    This Court has personal jurisdiction over KPI in this action. Upon information and belief, personal jurisdiction is proper under Federal Rule of Civil Procedure 4(k)(2) because (1) this case relates to assertions of patent infringement and therefore arises under federal law; (2) KPI is an Irish corporation and lacks sufficient contacts with any state; and (3) KPI has sufficient contacts with the United States as a whole, directing its patent enforcement efforts toward various U.S. entities. Upon information and belief, personal jurisdiction is also proper within this District because KPI purposefully availed itself of the privilege of doing business in Delaware by acquiring its patents from HPE as well as negotiating and licensing its patents to companies that are incorporated in Delaware and/or registered to do and currently conducting business in Delaware. Upon information and belief, personal jurisdiction is also proper within this District because KPI has purposefully availed itself of the privilege of doing business in Delaware directly or indirectly through Valtrus, PPS, Valinvest, PP Holdings, PP Licensing, and/or other alter-egos, subsidiaries, parents, or agents; maintains pervasive, continuous, and systematic contacts with the State of Delaware through Valtrus, PPS, Valinvest, PP Holdings, PP Licensing, and/or other alter-egos, subsidiaries, parents, or agents; and conducts business in this District pertaining to the Patents-in-Suit, including but limited to efforts to acquire as well as license or enforce the Patents-in-Suit through Valtrus, PPS, Valinvest, PP Holdings, PP Licensing, and/or other alter-egos, subsidiaries, parents, or agents.

45.    This Court has personal jurisdiction over PPS, an LLC organized and existing under the laws of the State of Delaware. Upon information and belief, personal jurisdiction is also proper

within this District because PPS purposefully availed itself of the privilege of doing business in Delaware by negotiating and licensing on behalf of KPI and Valtrus to companies that are incorporated in Delaware and/or registered to do and currently conducting business in Delaware. Upon information and belief, personal jurisdiction is also proper within this District because PPS has purposefully availed itself of the privilege of doing business in Delaware directly or indirectly; maintains pervasive, continuous, and systematic contacts with the State of Delaware; and conducts business in this District pertaining to the Patents-in-Suit, including but limited to efforts to license or enforce the Patents-in-Suit on behalf of KPI and Valtrus.

46.    Venue is proper in this District under 28 U.S.C. § 1391(c) and 1400(b) because, among other reasons, Valtrus is a foreign company and as such may be sued in any judicial district in the United States in which Valtrus is subject to the Court's personal jurisdiction; Valtrus has conducted business in this District; or a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

47.    Venue is proper in this District under 28 U.S.C. § 1391(c) and 1400(b) because, among other reasons, KPI is a foreign company and as such may be sued in any judicial district in the United States in which KPI is subject to the Court's personal jurisdiction; KPI has conducted business in this District; or a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

48.    Venue is proper in this District under 28 U.S.C. § 1391(b)–(c) because, among other reasons, PPS is subject to personal jurisdiction in this District; PPS has conducted business in this District; or a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

**COUNT I**
**VIOLATION OF THE DELAWARE CONSUMER FRAUD ACT**
**(AGAINST ALL DEFENDANTS)**

49.    SAP incorporates and realleges the foregoing paragraphs.

50.    The Delaware Consumer Fraud Act, 6 Del. C. §§ 2511-2528, protects against unlawful practices in, among other things, the advertisement of goods, intangibles, and/or services. Under the Consumer Fraud Act, advertisement includes any attempt by publication, dissemination, solicitation, and/or circulation to induce, directly or indirectly, any person to enter into any obligation or acquire any title or interest in such goods, intangibles, and/or services. As defined in Section 2513 of the Delaware Consumer Fraud Act, unlawful practices include any deception, fraud, false pretense, false promise, unfair practice, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission.

51.    In its correspondence and communications with SAP beginning on or around March 4, 2022—and including without limitation letters dated September 7, 2022; presentations dated October 6, 2022, and November 1, 2022; and communications through October 18, 2023—Defendants attempted by publication, dissemination, solicitation, and/or circulation to induce SAP to take a license to all or some of what Defendants characterized as an "extensive portfolio of patents." For instance, in both its March 4, 2022 and September 7, 2022 letters, Defendants represented its "intention to allow SAP to continue its use of these patents through a license from Valtrus" and informed SAP that Defendants had "licensing terms" to discuss.

52.    In conflict with these representations, and based on deception, fraud, false pretense, false promise, misrepresentation, unfair practice, and/or concealment, suppression, or omission of material facts with intent that SAP rely upon such concealment, suppression, or omission, Defendants did not have and never had reasonable, good-faith licensing terms to discuss with SAP.

The only terms Defendants presented to SAP did not attempt to reflect the value of the patents Defendants identified based on any recognized form of valuation. For example, Defendants' terms did not reflect the incremental value of patents that they identified to the exemplary SAP products they identified—or to any other SAP products.  In addition, Defendants' terms did not reflect the incremental value of the identified patents as compared to the market value of the Valtrus portfolio as reflected in Valtrus's agreements with HPE or Valtrus's licensees, including, upon information and belief, licensees that are Delaware corporations and/or licenses obtained with the assistance of a Delaware licensing agent. To the extent Defendants attempted to tie the terms they presented to SAP to benchmark licenses from previous licensees of some or all of the patents in Valtrus's portfolio, upon information and belief, such licenses were not comparable because *inter alia* they related to different companies, with different patents at issue, in different industry segments, with different accused products, different extent and duration of use, and/or different facts and circumstances. Defendants' own March 4, 2022 letter states that "Valtrus's portfolio covers a range of products and technologies including communication devices such as personal computers, tablets and smartphones, networking devices, memory, processors, WLAN, network analytics, power and many more related technologies." Defendants have not provided SAP with access to either Vatlrus's (1) agreement(s) with HPE or (2) any of purported benchmark license from a prior licensee.  Rather, upon information and belief, Defendants' licensing terms to SAP were deceptively, fraudulently, and unfairly based on (1) SAP's overall size or revenue or (2) the avoidance of litigation expenses. Moreover, Defendants in their communications did not present SAP with all of the material facts regarding the true ownership of the Patents-in-Suit, including the fact that Valtrus only held the Patents-in-Suit under a bare trust for the exclusive benefit of KPI.

53.     As a direct and proximate result of Defendants' conduct in violation of the Delaware Consumer Fraud Act, SAP has suffered and will continue to suffer material harm, including without limitation the accrual of legal fees, expenses, and time to investigate, respond to, and defend against Defendants claims.

## COUNT II
## CIVIL CONSPIRACY
## (AGAINST ALL DEFENDANTS)

54.     SAP incorporates and realleges the foregoing paragraphs.

55.     Civil conspiracy prohibits agreements between two or more entities to commit an unlawful act, such as a statutory violation.

56.     Valtrus, KPI, and PPS, willfully and knowingly combine, conspire, and agree together to violate the Delaware Consumer Fraud Act.

57.     Upon information and belief, PPS conducts intellectual property licensing and consulting services including, but not limited to, negotiation of licensing deals, patent asset management, patent portfolio mining and licensing program development, and management of strategic patent prosecution and litigation programs on behalf of KPI and Valtrus.

58.     Upon information and belief, PPS combined, agreed, and/or conspired with KPI and Valtrus to communicate, negotiate, analyze infringement and invalidity of Valtrus's patent portfolio including the Patents-in-Suit, and/or offer to license Valtrus's patent portfolio including the Patents-in-Suit, by failing to provide SAP with reasonable, good-faith licensing terms in violation of the Delaware Consumer Fraud Act as detailed in herein.

59.     As a direct and proximate result of Defendants' conduct in violation of the Delaware Consumer Fraud Act and Defendants' conduct to conspire violating the Delaware Consumer Fraud Act, SAP has suffered and will continue to suffer material harm, including

without limitation the accrual of economic damages, legal fees, expenses, and time to investigate, respond to, and defend against Valtrus's claims.

## COUNT III
## AIDING AND ABETTING
## (AGAINST PPS)

60.    SAP incorporates and realleges the foregoing paragraphs.

61.    Aiding and abetting precludes an entity from knowingly and substantially assisting another to commit an unlaw fact, such as a statutory violation.

62.    PPS knowingly and substantially assisted KPI and Valtrus to violate the Delaware Consumer Fraud Act by way of KPI's and Valtrus's conduct, actions, communications, negotiations, infringement and invalidity analyses, and/or offers to license Valtrus's patent portfolio, including the Patents-in-Suit, by failing to provide SAP with reasonable, good-faith licensing terms in violation of the Delaware Consumer Fraud Act as detailed in paragraphs 50–54.

63.    As a direct and proximate result of KPI's and Valtrus's conduct in violation of the Delaware Consumer Fraud Act and PPS's conduct to knowingly and substantially assist KPI and Valtrus in violating the Delaware Consumer Fraud Act, SAP has suffered and will continue to suffer material harm, including without limitation the accrual of economic damages, legal fees, expenses, and time to investigate, respond to, and defend against Valtrus's claims.

## COUNT IV
## DECLARATION REGARDING NON-INFRINGEMENT OF THE '173 PATENT

64.    SAP incorporates and realleges the foregoing paragraphs.

65.    Based on Valtrus's allegations that SAP infringes the '173 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '173 Patent.

66.    SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '173 Patent, at least because the SAP Service Cloud does not employ, incorporate, or otherwise make use of all the limitations of the '173 Patent's claims.

67.    For example, claim 1 requires an "assistant entity" that is selected "from a group of assistant entities based upon the determined context of the existing communication session." But the SAP Service Cloud does not include the required "assistant entity" that is chosen based on "the determined context." Instead, an SAP bot is triggered whenever a customer searches on the website—not based on any "determined context." Thus, the SAP Service Cloud does not meet the limitations of at least claim 1.

68.    As another example, claim 1 requires a "service system" that determines the "context of the existing communication session based upon context data concerning the existing communication session." To the extent that Valtrus successfully argues that the SAP bot is the required "assistant entity"—disputed in paragraph 30—the SAP bot then cannot concurrently be the required "service system" that determines context of the communication session. Thus, the SAP Service Cloud does not meet the limitations of at least claim 1.

69.    For at least these reasons, the SAP Service Cloud does not infringe the '173 Patent.

70.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '173 Patent.

## COUNT V
## DECLARATION REGARDING NON-INFRINGEMENT OF THE '929 PATENT

71.     SAP incorporates and realleges the foregoing paragraphs.

72.     Based on Valtrus's allegations that SAP infringes the '929 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '929 Patent.

73.     SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '929 Patent, at least because the SAP HANA system does not employ, incorporate, or otherwise make use of all the limitations of the '929 Patent's claims.

74.     For example, claim 1 requires that a system "determin[es] whether the database access command caused a change to the database." But the SAP HANA system does not make any such determination. Instead, SAP HANA triggers system replication without any determination step. Thus, the SAP HANA does not meet the limitations of at least claim 1.

75.     For at least these reasons, the SAP HANA system does not infringe the '929 Patent.

76.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '929 Patent.

## COUNT VI
## DECLARATION REGARDING NON-INFRINGEMENT OF THE '244 PATENT

77.     SAP incorporates and realleges the foregoing paragraphs.

78.    Based on Valtrus's allegations that SAP infringes the '244 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '244 Patent.

79.    SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '244 Patent, at least because SAP Cloud Integration does not employ, incorporate, or otherwise make use of all the limitations of the '244 Patent's claims.

80. For example, claim 1 requires that "first and second nodes are each coupled to a fault-tolerant storage system (FTSS)," "transmitting a message from the first node to a communication agent in the FTSS," and "transmitting the message from the FTSS to the second node." But the SAP Cloud Integration does include first or second nodes coupled to a fault-tolerant storage system as required by the claims. Thus, the SAP Cloud Integration does not meet the limitations of at least claim 1.

81.    For at least these reasons, the SAP Cloud Integration Suite not infringe the '244 Patent.

82.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '244 Patent.

## COUNT VII
## DECLARATION REGARDING NON-INFRINGEMENT OF THE '588 PATENT

83.    SAP incorporates and realleges the foregoing paragraphs.

84.    Based on Valtrus's allegations that SAP infringes the '588 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '588 Patent.

85.    SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '588 Patent, at least because the SAP Solution Manager does not employ, incorporate, or otherwise make use of all the limitations of the '588 Patent's claims.

86.    For example, claim 13 requires a "monitoring tool processing the monitoring data based at least in part on the corresponding metric definitions." But the SAP Solutions Manager's Event Calculation Engine does not process monitoring data using "the corresponding metric definitions" and instead uses configuration settings set up in the alerting directory. Thus, the SAP Solution Manager does not meet the limitations of at least claim 13.

87.    For at least these reasons, the SAP Solution Manager does not infringe the '588 Patent.

88.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '588 Patent.

**COUNT VIII**
**DECLARATION REGARDING NON-INFRINGEMENT OF THE '866 PATENT**

89.    SAP incorporates and realleges the foregoing paragraphs.

90.     Based on Valtrus's allegations that SAP infringes the '866 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '866 Patent.

91.     SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '866 Patent, at least because the SAP Solution Manager does not employ, incorporate, or otherwise make use of all the limitations of the '866 Patent's claims.

92.     For example, claim 1 requires a process of "evaluating the performance of the service." But the SAP Solution Manager is not directed to the performance of services but rather to the monitoring of technical components of a system. Thus, the SAP Solution Manager does not meet the limitations of at least claim 1.

93.     For at least these reasons, the SAP Solution Manager does not infringe the '866 Patent.

94.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '866 Patent.

## COUNT IX
## DECLARATION REGARDING NON-INFRINGEMENT OF THE '984 PATENT

95.     SAP incorporates and realleges the foregoing paragraphs.

96.     Based on Valtrus's allegations that SAP infringes the '984 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '984 Patent.

97.     SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '984 Patent, at least because the SAP HANA System does not employ, incorporate, or otherwise make use of all the limitations of the '984 Patent's claims.

98.     For example, claim 1 requires "a user defined function" that includes both "an input expression" and "a parameter expression." But the SAP HANA system does not include user defined functions with both an input and parameter expression. Instead, the HANA system's user defined functions only include input expressions. Thus, the SAP HANA system does not meet the limitations of at least claim 1.

99.     For at least these reasons, the SAP HANA system does not infringe the '984 Patent.

100.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '984 Patent.

### COUNT X
### DECLARATION REGARDING NON-INFRINGEMENT OF THE '409 PATENT

101.    SAP incorporates and realleges the foregoing paragraphs.

102.    Based on Valtrus's allegations that SAP infringes the '409 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '409 Patent.

103.    SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '409 Patent, at

least because the SAP software running on accused AMD, Ampere, and/or Intel processors does not employ, incorporate, or otherwise make use of all the limitations of the '409 Patent's claims.

104.    For example, claim 1 requires "a first process bus couple between the host controller and a first processor," "a second processor bus coupled between the host controller and a second processor" and "coherency control module." But, upon information and belief, the accused AMD, Ampere, and/or Intel processors utilize a single bus configuration and do not operate using the claimed coherency control module. In addition, the accused processors do not operate under the direction or control of SAP, and SAP cannot be found to infringe (directly or indirectly) based on the actions of third parties.  Thus, SAP software running on accused AMD, Ampere, and/or Intel do not meet the limitations of at least claim 1.

105.    For at least these reasons, SAP software running on accused AMD, Ampere, and/or Intel does not infringe the '409 Patent.

106.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '409 Patent.

**COUNT XI**
**DECLARATION REGARDING NON-INFRINGEMENT OF THE '182 PATENT**

107.    SAP incorporates and realleges the foregoing paragraphs.

108.    Based on Valtrus's allegations that SAP infringes the '182 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '182 Patent.

109.    SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by

inducement)), and/or under the doctrine of equivalents, any of the claims of the '182 Patent, at least because SAP HANA does not employ, incorporate, or otherwise make use of all the limitations of the '182 Patent's claims.

110.    For example, claim 17 requires "forwarding the logged write requests as send batches to a second redundancy appliance at the secondary storage facility disjoint from the primary storage facility," "the second storage facility batching the received write request as receive batches" and "storing data associated with the receive batches in secondary storage at the secondary storage facility." But SAP HANA does not forward or receive redundant write requests in the claim batches.  Thus, SAP HANA do not meet the limitations of at least claim 17.

111.    For at least these reasons, the SAP HANA does not infringe the '182 Patent.

112.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '182 Patent.

## COUNT XII
## DECLARATION REGARDING NON-INFRINGEMENT OF THE '575 PATENT

113.    SAP incorporates and realleges the foregoing paragraphs.

114.    Based on Valtrus's allegations that SAP infringes the '575 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '575 Patent.

115.    SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '575 Patent, at

least because SAP Data Services does not employ, incorporate, or otherwise make use of all the limitations of the '575 Patent's claims.

116.    For example, claim 1 requires "a real time information director (RTID) executing on the computing system that transforms data for supply, consumption, or both by the applications under direction of polymorphic metadata that defines a security model and data integrity rules for application to the data, the RTID to dynamically instantiate, create, and cache for reuse disassemblers and assemblers according to demand," "at least one disassembler defined according to the polymorphic metadata that disassembles inbound data documents into multiple records in preparation for insertion into metadata tables" and "at least one assembler defined according to the polymorphic metadata that assembles outbound data documents from at least one record selected from at least one metadata-selected table whereby data is transformed for supply, consumption or both." But SAP Data Services does not employ any "security model," "data integrity rules," "assembler," or "disassembler," as required by the claims.  SAP Data Services also does not utilize any claims "polymorphic metadata."  Thus, SAP Data Services do not meet the limitations of at least claim 1.

117.    For at least these reasons, the SAP Data Services does not infringe the '575 Patent.

118.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '575 Patent.

## COUNT XIII
## DECLARATION REGARDING NON-INFRINGEMENT OF THE '139 PATENT

119.    SAP incorporates and realleges the foregoing paragraphs.

120.    Based on Valtrus's allegations that SAP infringes the '139 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '139 Patent.

121.    SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '139 Patent, at least because SAP HANA does not employ, incorporate, or otherwise make use of all the limitations of the '139 Patent's claims.

122.    For example, claim 1 requires "computing a difference between an active transaction redo log and an archive transaction redo log to produce a delta image at the primary site," "transmitting the active transaction redo log and the delta image, separately in time sequence, from the primary site to the standby site" and "combining the delta image with the active transaction redo log at the standby site, to produce a standby archive transaction redo log." But SAP HANA does not compute a delta image between redo logs, transmit any such delta image or any redo log, and does not utilize such to produce another redo log. Thus, SAP HANA does not meet the limitations of at least claim 1.

123.    For at least these reasons, SAP HANA does not infringe the '139 Patent.

124.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '139 Patent.

## COUNT XIV
## DECLARATION REGARDING NON-INFRINGEMENT OF THE '738 PATENT

125.    SAP incorporates and realleges the foregoing paragraphs.

126.    Based on Valtrus's allegations that SAP infringes the '738 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '738 Patent.

127.    SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '738 Patent, at least because SAP Cloud Integration does not employ, incorporate, or otherwise make use of all the limitations of the '738 Patent's claims.

128.    For example, claim 1 requires "selectively indicating to the layer of the protocol stack that context information is to be obtained for that layer," "obtaining, by the computing device, context information in accordance with the indication" and "adding, by the computing device, the obtained context information to the outgoing message such that a response, received from the destination node, to the outgoing message contains the obtained context information." But SAP Cloud Integration does not compute obtain or transmit context information in the manner required by the claims. Thus, SAP Cloud Integration does not meet the limitations of at least claim 1.

129.    For at least these reasons, SAP Cloud Integration does not infringe the '738 Patent.

130.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '738 Patent.

## COUNT XV
## DECLARATION REGARDING NON-INFRINGEMENT OF THE '264 PATENT

131.    SAP incorporates and realleges the foregoing paragraphs.

132.    Based on Valtrus's allegations that SAP infringes the '264 Patent, an actual controversy has arisen and now exists between the parties as to whether SAP infringes any claim of the '264 Patent.

133.    SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly), indirectly (whether contributorily or by inducement)), and/or under the doctrine of equivalents, any of the claims of the '264 Patent, at least because SAP software running on accused AMD, Ampere, and/or Intel processors does not employ, incorporate, or otherwise make use of all the limitations of the '264 Patent's claims.

134.    For example, claim 1 requires "a resource allocation controller coupled to determine an accessing cache memory controller selected from the group consisting of the first and second cache memory controllers, whereby the accessing cache memory controller is allowed to access the allocable cache memory block." But, upon information and belief, the accused AMD, Ampere, and/or Intel processors do not operate using the claimed resource allocation controller. In addition, the accused processors do not operate under the direction or control of SAP, and SAP cannot be found to infringe (directly or indirectly) based on the actions of third parties. Thus, SAP software running on accused AMD, Ampere, and/or Intel do not meet the limitations of at least claim 1.

135.    For at least these reasons, SAP software running on accused AMD, Ampere, and/or Intel processors does not infringe the '264 Patent.

136.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, SAP requests a declaration by the Court that it does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any valid, enforceable claim of the '264 Patent.

## JURY DEMAND

137.    SAP hereby demands trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, SAP asks this Court to enter judgment in SAP's favor and against Defendants by granting the following relief:

a)    a declaration that SAP does not infringe and has not infringed, under any theory of infringement (including directly (whether individually or jointly) or indirectly (whether contributorily or by inducement)), any enforceable claim of the Patents-in-Suit;

b)    a determination that Defendants have violated the Delaware Consumer Fraud Act, 6 Del. C. §§ 2511-2528;

c)    a determination that Defendants have conspired to violate the Delaware Consumer Fraud Act, 6 Del. C. §§ 2511-2528;

d)    a determination that PPS aided and abetted KPI and Valtrus to violate the Delaware Consumer Fraud Act, 6 Del. C. §§ 2511-2528;

e)    a judgment against Defendants for the amount of damages that SAP proves at trial;

f)    a permanent injunction restraining Defendants, and its respective officers, agents, servants, employees, attorneys, and any other persons acting on their behalf or in concert with them, from (a) charging or threatening, orally or in writing, that the Patents-in-Suit have been infringed by SAP under any subsection of 35 U.S.C. § 271 and/or (b) engaging in any additional related unlawful practices in violation of the Delaware Consumer Fraud Act, 6 Del. C. §§ 2511-2528;

       g)    a finding based upon 35 U.S.C. § 285 that Defendants' continued enforcement of the Patents-in-Suit is exceptional; and

       h)    an award to SAP of its reasonable attorneys' fees, costs, and all interest, and

       i)    any such other and further relief as the Court finds just and proper.

Dated:  June 26, 2024

Public Version Dated:  July 18, 2024

Respectfully submitted,

**DUANE MORRIS LLP**

*/s/ Monté T. Squire*

Monté T. Squire (No. 4764)
1201 N. Market Street, Suite 501
Wilmington, DE  19801
Telephone:  (302) 657-4900
mtsquire@duanemorris.com

*Counsel for SAP America, Inc.*

**OF COUNSEL:**

Aleksander J. Goranin (*pro hac forthcoming*)
**DUANE MORRIS LLP**
30 South 17th Street
Philadelphia, PA  19103-4196
Telephone:  (215) 979-1000
agoranin@duanemorris.com

Thomas M. Melsheimer (*pro hac forthcoming*)
Michael A. Bittner (*pro hac* forthcoming)
Brett Johnson
Patrick Clark
**WINSTON & STRAWN, LLP**
2121 N. Pearl Street, Suite 900
Dallas, TX  75201
Telephone: (214) 453-6500
tmelsheimer@winston.com
mbittner@winston.com
mbjohnson@winston.com
pclark@winston.com