## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAP America, Inc. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 24-cv-756-GBW |
| | § | |
| | § | JURY TRIAL DEMANDED |
| Valtrus Innovations Ltd., Key Patent | § | |
| Innovations Ltd., and Patent Platform | § | |
| Services, LLC | § | |
| | § | |
| | § | |
| Defendants. | § | |

### DEFENDANTS' OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION, UNDER THE FIRST-TO-FILE RULE, LACK OF PERSONAL JURISDICTION, AND FOR FAILURE TO STATE A CLAIM

Dated: August 28, 2024

Of Counsel:

Matthew G. Berkowitz - LEAD ATTORNEY
Patrick Colsher
Navid C. Bayar
Reichman Jorgensen Lehman &
Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, California 94065
Telephone: (650) 623-1401
mberkowitz@reichmanjorgensen.com
pcolsher@reichmanjorgensen.com
nbayar@reichmanjorgensen.com

Khue V. Hoang
Reichman Jorgensen Lehman & Feldberg LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Tel: (212) 381-1965
khoang@reichmanjorgensen.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Defendants*

## TABLE OF CONTENTS

**Page(s)**

NATURE AND STATE OF THE PROCEEDINGS ........................................................1

SUMMARY OF THE ARGUMENT ........................................................................3

FACTUAL BACKGROUND ................................................................................5

    I.     The Parties and this Case Have No Ties to Delaware. .................................5

    II.    Valtrus's Licensing Discussions with SAP..................................................7

    III.   Valtrus Sues in EDTX After Which SAP Countersues in Delaware, Dismisses Its First Case, Then Refiles a Largely Duplicative Action. .................................7

ARGUMENT ....................................................................................................9

    I.     The Court Lacks Subject Matter Jurisdiction Over Counts IV-V and VII-IX, and Should Otherwise Not Exercise Discretionary Jurisdiction Over The Entirety of This Action Given the Co-Pending and Overlapping Litigation in the First-Filed EDTX Case. ....................................................................................9

        A.  The Court Lacks Subject Matter Jurisdiction Over Counts IV-V and VII-IX.........9

        B.  The Court Should Use its Discretion to Decline to Exercise Declaratory Judgment Act Jurisdiction Over Counts IV-XV ....................................................10

        C.  The Court Should Dismiss or Transfer This Case Under the First-to-File Rule ...11

    II.    The Court Lacks Personal Jurisdiction Over Valtrus and KPI (Counts I-II and IV-XV). ...............................................................................................13

        A.  The Court Lacks General Personal Jurisdiction Over Valtrus and KPI.................13

        B.  The Court Lacks Specific Personal Jurisdiction Over Valtrus and KPI ...............13

        C.  SAP's State Law Claims Must Be Dismissed For Failure to State a Claim ..........20

        D.  The DCFA Claim Fails ........................................................................20

        E.  SAP's Conspiracy and Aiding and Abetting Claims Fail to State a Claim ...........24

CONCLUSION................................................................................................25

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Federal Cases**

*Abraham v. Am. Home Mortg. Servicing, Inc.*,
  947 F. Supp. 2d 222 (E.D.N.Y. 2013) ...................................................................23

*ACCO Brands USA LLC v. Performance Designed Prods. LLC*,
  2024 WL 181545 (D. Del. Jan. 17, 2024) (Williams, J.) ......................................19

*Apple Inc. v. Zipit Wireless, Inc.*,
  30 F.4th 1368 (Fed. Cir. 2022) .............................................................................20

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
  552 F.3d 1324 (Fed. Cir. 2008) ............................................................................19

*Blair v. Infineon Technologies AG*, 720 F. Supp. 2d 462 (D. Del. 2010) ....................17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..............................................................................................20

*Care Corp. v. Kiddie Care Corp.*,
  344 F. Supp. 12 (D. Del. 1972) ........................................................................4, 10

*Cisco Sys., Inc. v. Ramot at Tel Aviv Univ., Ltd.*,
  2022 WL 16921988 (D. Del. Nov. 14, 2022) .......................................................12

*Commc'ns Test Design, Inc. v. Contec, LLC*,
  952 F.3d 1356 (Fed. Cir. 2020) .....................................................................10, 12

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014) ..............................................................................................13

*Eames v. Nationwide Mut. Ins. Co.*,
  2008 WL 4455743 (D. Del. Sept. 30, 2008) .........................................................23

*Eldon v. Brown*,
  2010 WL 415317 (D.N.J. Jan. 29, 2010) ..............................................................16

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
  575 F.3d 1312 (Fed. Cir. 2009) ............................................................................23

*Ford Motor Co. v. United States*,
  811 F.3d 1371 (Fed. Cir. 2016) .....................................................................10, 11

*Futurewei Techs., Inc. v. Acacia Rsch. Corp.*,
    737 F.3d 704 (Fed. Cir. 2013) ................................................................. 12

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
    466 U.S. 408 (1984) ............................................................................. 13

*Johnson v. Ace Cash Express Inc.*,
    2015 WL 4397482 (D. Del. July 17, 2015) ............................................. 24

*LaSala v. Marfin Popular Bank Pub. Co.*,
    410 F. App'x 474 (3d Cir. 2011) ........................................................... 14

*M-I Drilling Fluids UK Ltd. V. Dynamic Air Ltda.*,
    890 F.3d 995 (Fed Cir. 2018) ................................................................. 18

*Mallinckrodt, Inc. v. E–Z Em Inc.*,
    670 F. Supp. 2d 349 (D. Del. 2009) ...................................................... 12

*Martinez v. Union Officine Meccaniche S.P.A.*,
    2023 WL 3336644 (3d Cir. May 10, 2023) ............................................ 16

*McDonough v. Gorman*,
    2017 WL 3528846 (D. Del. Aug. 16, 2017) ........................................... 17

*Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*,
    960 F.2d 1217 (3d Cir. 1992) ............................................................... 13

*Mobility Elecs., Inc. v. Am. Power Conversion Corp.*,
    2007 WL 9724768 (E.D. Tex. Oct. 10, 2007) ........................................ 12

*Neifeld v. Steinberg*,
    438 F.2d 423 (3d Cir. 1971) ................................................................... 4

*Nespresso USA, Inc. v. Ethical Coffee Co. SA*,
    263 F. Supp. 3d 498 (D. Del. 2017) ...................................................... 13

*O'Connor v. Sandy Lane Hotel Co.*,
    496 F.3d 312 (3d Cir. 2007) ................................................................. 14

*Pearson v. Component Tech. Corp.*,
    247 F.3d 471 (3d Cir. 2001) ................................................................. 17

*Prasco, LLC v. Medicis Pharm. Corp.*,
    537 F.3d 1329 (Fed. Cir. 2008) .......................................................... 4, 10

*Priority Healthcare Corp. v. Aetna Specialty Pharmacy, LLC*,
    590 F. Supp. 2d 663 (D. Del. 2008) ...................................................... 10

*Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,*
    819 F.2d 434 (3d Cir. 1987)............................................................................13

*Reach & Assocs., P.C. v. Dencer,*
    269 F. Supp. 2d 497 (D. Del. 2003)..............................................................17

*Registered Agents, Ltd. v. Registered Agent, Inc.,*
    880 F. Supp. 2d 541 (D. Del. 2012)..............................................................14

*Robert Bosch LLC v. Alberee Prods., Inc.,*
    70 F. Supp. 3d 665 (D. Del. 2014)................................................................18

*Samsung Elecs. Co. v. Netlist, Inc.,*
    2022 WL 3027312 (D. Del. Aug. 1, 2022) ...................................................12

*Touchcom, Inc. v. Bereskin & Parr,*
    574 F.3d 1403 (Fed. Cir. 2009).....................................................................19

*Trevino v. Merscorp, Inc.,*
    583 F.Supp.2d 521 (D. Del. 2008).................................................................17

*U.S. ex rel. Tucker v. Nayak,*
    2008 WL 140948 (S.D. Ill. Jan. 11, 2008)....................................................23

*United States v. Eastwick Coll.,*
    657 Fed. App'x. 89 (3d Cir. 2016)................................................................23

*Wilton v. Seven Falls Co.,*
    515 U.S. 277 (1995)......................................................................................10

**State Cases**

*Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.,*
    2005 WL 578972 (Del. Ch. Mar. 3, 2005)....................................................25

*Anschutz Corp. v. Brown Robin Cap., LLC,*
    2020 WL 3096744 (Del. Ch. June 11, 2020).................................................25

*Benning v. WIT Cap. Grp. Inc.,*
    2001 WL 38781 (Del. Super. Ct. Jan. 10, 2001), *rev'd,* 792 A.2d 188 (Del.
    2001) ..............................................................................................................22

*CLP Toxicology, Inc. v. Casla Bio Holdings, LLC,*
    2020 WL 3564622 (Del. Ch. June 29, 2020).........................................15, 16

*Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP,*
    2014 WL 6703980 (Del. Ch. Nov. 26, 2014) ...............................................25

*Largo Legacy Grp., LLC v. Charles*,
   2021 WL 2692426 (Del. Ch. June 30, 2021)..........................................................25

*Lynch v. Gonzalez Gonzalez*,
   2020 WL 3422399 (Del. Ch. June 22, 2020)..........................................................16

*Marshall v. Priceline.com Inc.*,
   2006 WL 3175318 (Del. Super. Ct. Oct. 31, 2006).............................................21, 22

*Metro. Life Ins. Co. v. Tremont Grp. Holdings, Inc.*,
   2012 WL 6632681 (Del. Ch. Dec. 20, 2012)..........................................................25

*MHS Cap. LLC v. Goggin*,
   2018 WL 2149718 (Del. Ch. May 10, 2018)...........................................................25

*Nieves v. All Star Title, Inc.*,
   2010 WL 2977966 (Del. Super. Ct. July 27, 2010).................................................22

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
   872 A.2d 611 (Del. Ch. 2005), *rev'd in part*, 901 A.2d 106 (Del. 2006)..............................22

**Federal Statutes**

28 U.S.C. § 1404.....................................................................................................2

Declaratory Judgment Act ...................................................................................4, 11

**State Statutes**

Del. Code Ann. Title 10, § 3104(c) .........................................................................14

Delaware Consumer Fraud Act............................................................................. *passim*

**Rules**

Fed. R. Civ. P. 4(k)(2)...........................................................................4, 14, 18, 19

Fed. R. Civ. P. 9(b) ..........................................................................................23, 24

Fed. R. Civ. P. 12(b)(1)........................................................................................10, 11

Fed. R. Civ. P. 12(b)(2)........................................................................................13, 20

Fed. R. Civ. P. 12(b)(6)..........................................................................................4, 20

**Other Authorities**

5B Fed. Prac. & Proc. Civ (Wright & Miller) § 1347 ..................................................4

## NATURE AND STATE OF THE PROCEEDINGS

This case began in Texas as a simple patent infringement suit between Valtrus (the owner of a portfolio of patents), and SAP (the alleged infringer).  But the dispute has since spilled into this District with SAP filing two successive overlapping declaratory judgment actions, the first of which SAP voluntarily dismissed, and the second of which Valtrus now contends should be dismissed too.

Specifically, in January of this year, after Valtrus sued SAP in the Eastern District of Texas for infringing seven of its patents ("*Valtrus I*"),[1] SAP countered by filing a declaratory judgment action in this Court ("*SAP DJ I*"), seeking a declaration of non-infringement for six of Valtrus's patents and asserting a claim under the Delaware Consumer Fraud Act ("DCFA").[2]  *SAP DJ I*, D.I. 1.  At this point, *Valtrus I* and *SAP DJ I* had one overlapping patent.  SAP then amended its complaint to name Valtrus's licensing consultant, Patent Platform Services ("PPS"), as a defendant, and added aiding-and-abetting and conspiracy claims based on its DCFA claim.  *Id.* at D.I. 7.

Valtrus moved to dismiss *SAP DJ I* for lack of personal jurisdiction and under the first-to-file rule, and Valtrus and PPS both moved to dismiss the DCFA claim and its related claims for failing to state a claim.  *Valtrus I*, D.I. 14.  In response, SAP requested (and the Court granted) jurisdictional discovery as to Valtrus.  D.I. 28.  The day *after* its opposition brief was due, and after taking jurisdictional discovery (including interrogatories, documents, and depositions of both Valtrus and its parent company, Key Patent Innovations, Ltd.), SAP dismissed *SAP DJ I*.  In its place, SAP filed the present similar declaratory judgment action ("*SAP DJ II*").  This new action

---

[1] *Valtrus Innovations Ltd. v. SAP Am., Inc.*, *et al.* No. 2:24-cv-00021-JRG, D.I. 1 (E.D. Tex. Jan. 15, 2024) ("*Valtrus I*").

[2] *SAP Am., Inc. v. Valtrus Innovations Ltd., et al.* No. 1:24-cv-000054-GBW, D.I. 1 (D. Del. Jan. 15, 2024) ("*SAP DJ I*").

merely adds Key Patent Innovations, Ltd. ("KPI") as a defendant, and requests a declaration of non-infringement for all patents in *SAP DJ I* and *Valtrus I*, while reasserting state law claims against Valtrus, PPS, and now KPI in the following order:

- Count I alleges a violation of the Delaware Consumer Fraud Act ("DCFA") against all defendants;

- Count II alleges civil conspiracy against all defendants;

- Count III alleges aiding and abetting against PPS; and

- Counts IV-XV seek declarations of non-infringement of 12 patents owned by Valtrus.

Meanwhile, the *Valtrus I* case has been proceeding on schedule in the EDTX, with the parties serving infringement and invalidity contentions, engaging in substantive discovery (including third-party discovery), and preparing for claim construction, with a Markman hearing set for March 14, 2025, and a trial scheduled for September 22, 2025. *See Valtrus I*, D.I. 65.

Valtrus and SAP continue to litigate the first-filed overlapping *Valtrus I* case in EDTX. There, SAP first moved for intra-district transfer from the Marshall Division to the Sherman Division under 28 U.S.C. §1404. *Valtrus I,* D.I. 22. A few months later—the day after it filed *SAP DJ II*—SAP moved to dismiss *Valtrus I* for lack of standing, arguing that KPI should have been a co-plaintiff for Valtrus to have standing to sue. *Id.* at D.I. 51. In addition to opposing dismissal, Valtrus (now with KPI, as a co-plaintiff) also filed a protective complaint as a separate action in EDTX ("*Valtrus II*").[3] SAP then moved to dismiss *Valtrus II*, arguing that it was

---

[3] *Valtrus Innovations Ltd. and Key Patent Innovations Ltd. v. SAP Am., Inc.*, et al. No. 2:24-cv-533-JRG, D.I. 1 (E.D. Tex. July 12, 2024) ("*Valtrus II*"). Valtrus filed this protective complaint as a placeholder in case the EDTX court erroneously concluded that Valtrus did not have standing. The protective complaint includes the same allegations, but joins KPI as a co-plaintiff.

duplicative of *Valtrus I* or, alternatively, to transfer that case to this Court under the first-to-file rule. *Valtrus II*, D.I. 5.  The following motions are pending before the Court in EDTX:

- SAP's motion to transfer *Valtrus I* from the Marshall Division to the Sherman Division (D.I. 22);

- SAP's motion to dismiss *Valtrus I* for lack of standing (D.I. 51);

- Valtrus's motion to join KPI via an amended complaint in *Valtrus I* (D.I. 56); and

- SAP's motion to dismiss the *Valtrus II* protective complaint (D.I. 5).

## SUMMARY OF THE ARGUMENT

After failed patent licensing discussions, Valtrus sued SAP for patent infringement in the Eastern District of Texas. Unhappy with this development, SAP embarked on an aggressive campaign to avoid Judge Gilstrap's courtroom at all costs.  SAP filed two declaratory judgment complaints before this Court (later withdrawing one), two motions to dismiss in EDTX, and two motions to transfer venue (one intra-district, and one inter-district).  Its only stated justification for all this paperwork is that Valtrus and KPI should have filed as joint plaintiffs from the outset in view of an intra-family trust agreement.  Nonetheless, what should have been a straightforward patent infringement case in EDTX is now mired in procedural chaos, excessive and wasteful venue-related litigation, and an unnecessary drain on the resources of two different Courts.  In short, this case does not belong in this District for a myriad of reasons, explained below, and should be dismissed or otherwise transferred to the Eastern District of Texas.

\* \* \*

*First*, this Court lacks subject matter jurisdiction over Counts IV-V and VII-IX, which seek a declaration of non-infringement of five patents that the parties have not discussed in at least seven months.  On January 15, 2024, Valtrus selected seven patents that it asserted in *Valtrus I*

3

against SAP.  The parties have not discussed these patents since that time, and Valtrus has given

no indication that it intends to file a second litigation adding more patents.  SAP therefore has no

basis to think there is a "substantial controversy" of "sufficient immediacy and reality to warrant"

the requested relief.  *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008).

*Second*, the Court should decline to exercise declaratory judgment jurisdiction.  This is the

second-filed case and was filed over six months after *Valtrus I.*  A straightforward application of

the first-to-file rule requires dismissing or transferring this case to EDTX.[4]  More generally, SAP's

race-to-the-courthouse approach is entirely inconsistent with the purpose of the Declaratory

Judgment Act and amounts to little more than a "weapon in a game of procedural fencing."  *See*

*Care Corp. v. Kiddie Care Corp.*, 344 F. Supp. 12, 16 n.2 (D. Del. 1972) (explaining reasons that

courts should decline to entertain declaratory judgment actions).

*Third*, this District lacks personal jurisdiction over Valtrus and KPI, which are Irish entities

with ongoing litigation and activities in Texas, but no presence or activities whatsoever in

Delaware.  Federal Rule 4(k)(2) also doesn't establish jurisdiction because its two conditions—

lack of jurisdiction in other districts and compliance with due process—aren't met.

*Finally*, SAP's state law claims must be dismissed because, among other reasons, it is well-

settled that the claims require some alleged wrongful action to have occurred in Delaware.  SAP

—now on its third try with the filing of *SAP DJ II*, after already amending *SAP DJ I*—makes no

such allegation (because it cannot) and therefore has no standing to maintain the claims.

---

[4] Valtrus moves under the Declaratory Judgment Act, first-to-file rule and Fed. R. Civ. P. 12(b)(6) only in the alternative.  Valtrus does not intend to waive its personal jurisdiction arguments by moving in the alternative for dismissal under Fed. R. Civ. P. 12(b)(6) or under the first-to-file rule.  *See* Fed. R. Civ. P. 12(b) ("No defense or objection is waived by joining it with one or more other defenses or objections in a responsive pleading or in a motion."); *see also Neifeld v. Steinberg*, 438 F.2d 423, 427 (3d Cir. 1971); 5B Fed. Prac. & Proc. Civ. (Wright & Miller) § 1347 (4th ed; Feb. 2024 Supp.) (explaining that personal jurisdiction is not waived where a defendant moves in the alternative on other grounds).

* * *

At bottom, this case is a preemptive attempt by a patent infringer to deprive the patent owner of its preferred forum in Texas.  Indeed, SAP does not even dispute that venue is proper there, as it initially moved only for intra-district transfer from Marshall to the Sherman Division. And SAP's state law claims, based on routine pre-litigation license negotiations occurring entirely *outside* of Delaware, are meritless, and seemingly asserted as a hook for SAP to gin up Delaware-specific issues to make this case stick.  Delaware simply has no connection to this dispute, so Defendants' claims should be dismissed or, in the alternative, transferred to the EDTX to be joined with the pending action.

## FACTUAL BACKGROUND

### I.    The Parties and this Case Have No Ties to Delaware.

Valtrus and KPI (Valtrus's parent) are both Dublin-based Irish entities.  Declaration of Angela Quinlan ("Quinlan Decl.") at ¶3.  Neither KPI nor Valtrus has employees in the United States.  Quinlan Decl. at ¶5.  Valtrus is the successor-in-interest to a substantial patent portfolio created by HPE and its predecessor entities. *Id.* at ¶¶3, 11.  HPE is headquartered in Spring, Texas, with a primary U.S. facility in Frisco, Texas.  Ex. D (HPE U.S. Offices).  KPI contracts with PPS to provide patent licensing consulting services to Valtrus.  Quinlan Decl. at ¶8.

PPS is a Delaware entity with its principal place of business in Frisco, Texas.  Declaration of Kalpana Kumar ("Kumar Decl.") at ¶3.  Numerous PPS employees are Texas residents who live near the Frisco headquarters, including the executive with primary responsibility for handling Valtrus's patent license discussions with SAP, and a technical employee responsible for preparing certain claim charts used in the SAP license discussions. *Id.* at ¶7.  The remaining PPS employees involved in supporting the Valtrus patent licensing program reside in Pennsylvania and New

5

Jersey; none reside in Delaware.[5]  *Id.* at ¶7.  PPS has not conducted business with SAP from or in Delaware, nor has it asserted patents on Valtrus's behalf in Delaware against SAP.  *Id.* at ¶¶5-6.

SAP America is a subsidiary of the German software company SAP SE.  D.I. 2 at ¶ 2.  SAP America presently has an established place of business in Frisco, Texas and may be served with process through its registered agent, CT Corporation System in Dallas, Texas.  Ex. E at 3 (Affidavit of Service on SAP); Berkowitz Decl. at ¶¶3, 8.

SAP does not allege that this case has any connection to Delaware aside from its own place of incorporation and that of PPS's.  *See generally*, D.I. 2.  Importantly, both KPI and Valtrus (1) are not registered to conduct business in Delaware; (2) do not have a registered agent for service of process in Delaware; (3) do not have offices, employees, board members, contractors, equipment, bank accounts, or other assets in Delaware; (4) are not subject to and have never paid taxes in Delaware; (5) do not manufacture or sell products in Delaware; (6) have never granted a license of any patent in the Valtrus portfolio to an entity with a principal place of business in Delaware; (7) have not conducted live, in-person meetings in Delaware concerning any of Valtrus's patents (either directly or via PPS); (8) have not entered into Delaware for any business reason, including for the purpose of signing contracts; and (9) do not own, lease, or rent any property in Delaware.  Quinlan Decl. at ¶6; Kumar Decl. at ¶¶5-7.  Further, neither Valtrus nor KPI have enforced their legal rights in Delaware against anyone for any reason; all of their related pending U.S. patent lawsuits are in Texas federal courts, as noted in the *SAP DJ II* complaint.  *See* D.I. 2 at ¶ 43; Quinlan Decl. at ¶7.  Those lawsuits involve nearly identical issues, as all of patents

---

[5] PPS has one employee who resides in Delaware (Stephen Pomraning).  Kumar Decl. at ¶5.  However, Mr. Pomraning has never been and currently is not involved in any aspect of the Valtrus licensing program.  *Id.*

asserted in *Valtrus I* are now at issue in this case. *See* Ex. A (*Valtrus I* Complaint); Berkowitz Decl. at ¶2.

## II.    Valtrus's Licensing Discussions with SAP

In January 2021, Valtrus acquired rights to the patents-in-suit from HPE ("Valtrus/HPE Transaction"). Quinlan Decl. at ¶¶3, 11. Valtrus then began licensing negotiations with various companies. When certain licensing discussions failed to result in mutually acceptable deals, Valtrus initiated litigation to enforce its intellectual property rights in Texas, where both HPE and PPS are headquartered. *Id.* at ¶12; Kumar Decl. at ¶3.

In March 2022, Ms. Angela Quinlan (Valtrus's Managing Director in Ireland) sent written notice to Mr. Christian Klein (CEO of SAP SE in Germany) regarding SAP's potential patent infringement as well as a list of patents which Valtrus believed it infringed and an identification of corresponding infringing SAP products. Ex. G to D.I. 2; Quinlan Decl. at ¶9. In September 2022, Ms. Quinlan sent a follow-up letter to Mr. Klein, again requesting to discuss potential licensing terms. Ex. H to D.I. 2; Quinlan Decl. at ¶9. After SAP's eventual response, Valtrus provided SAP SE substantial evidence of its infringement, leading to discussions between relevant individuals located in Germany, Ireland, Texas, Pennsylvania, and New Jersey. D.I. 2 at ¶ 22; Quinlan Decl. at ¶9; Kumar Decl. at ¶6.

Valtrus filed a complaint for patent infringement in Texas after failing to reach agreement with SAP on acceptable licensing terms.

## III.    Valtrus Sues in EDTX After Which SAP Countersues in Delaware, Dismisses Its First Case, Then Refiles a Largely Duplicative Action.

On January 15, 2024, Valtrus sued both SAP SE and SAP America in EDTX (Marshall Division) for infringing seven of its patents. Ex. B (*Valtrus I* ECF filing confirmation); Berkowitz Decl. at ¶5. A morass of venue-driven litigation soon followed.

Minutes after Valtrus filed *Valtrus I*, SAP America sued Valtrus in this Court requesting a declaration of non-infringement for six of Valtrus's patents (one of which had already been asserted in *Valtrus I*) and further alleged that Valtrus violated the Delaware Consumer Fraud Act ("DCFA"). *See SAP DJ I*, D.I. 1; Ex. C (*SAP DJ I* ECF filing confirmation). Valtrus moved to dismiss on personal jurisdiction and other grounds, *see SAP DJ I*, D.I. 14, only to have SAP voluntarily dismiss the case the day after its opposition brief was due (after significant jurisdictional discovery and after SAP had already filed one amended complaint). *SAP DJ I*, D.I. 36. SAP moved for intra-district transfer out of Marshall, TX, moved to dismiss *Valtrus I*, and filed this new case, *SAP DJ II*.

After SAP filed *SAP DJ II*, Valtrus (with KPI, as a co-plaintiff) filed *Valtrus II* as a vehicle for the EDTX court to simply continue the case with minimal overall disruption, even if the court found Valtrus lacked standing in *Valtrus I*. SAP then moved to dismiss *Valtrus II* as well, arguing that it was duplicative of *Valtrus I* or, alternatively, to transfer the case to this Court under the first-to-file rule. *Valtrus II*, D.I. 5. In sum, the following pending motions are before the Court in EDTX:

- SAP's motion to transfer *Valtrus I* from the Marshall Division to the Sherman Division (D.I. 22);

- SAP's motion to dismiss *Valtrus I* for lack of standing (D.I. 51);

- Valtrus's motion to join KPI via an amended complaint in *Valtrus I* (D.I. 56); and

- SAP's motion to dismiss the *Valtrus II* protective complaint (D.I. 5).

This action—*SAP DJ II*—is similar to *SAP DJ I*, with the main differences being that the current action (1) names KPI as a defendant; (2) requests a declaration of non-infringement with respect to all patents at issue in *Valtrus I* (plus five others that were previously at issue in *SAP DJ*

8

*I*); and (3) attempts to further manufacture jurisdiction over Valtrus and KPI with allegations about the location of their shareholders.  D.I. 2.

In sum, SAP now requests a declaration of non-infringement for all patents in *SAP DJ I* and *Valtrus I*, while reasserting state law claims[6] against Valtrus, PPS, and now KPI in the following order:

- Count I alleges a violation of the Delaware Consumer Fraud Act ("DCFA") against all defendants;

- Count II alleges civil conspiracy against all defendants;

- Count III alleges "aiding and abetting" against PPS; and

- Counts IV-XV seek declarations of non-infringement for 12 of Valtrus's patents.

## ARGUMENT

**I.  The Court Lacks Subject Matter Jurisdiction Over Counts IV-V and VII-IX, and Should Otherwise Not Exercise Discretionary Jurisdiction Over The Entirety of This Action Given the Co-Pending and Overlapping Litigation in the First-Filed EDTX Case.**

### A.  The Court Lacks Subject Matter Jurisdiction Over Counts IV-V and VII-IX

SAP faced no "*real and immediate* injury or threat of future injury" to which it was responding with the *SAP DJ II* action, as the parties were 6 months into litigating this infringement dispute in EDTX when SAP filed this case.  *See Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008) (emphasis in original).  And, at no point since the date when Valtrus filed *Valtrus I*—January 15, 2024—has Valtrus indicated that it plans to assert the 5 non-overlapping patents (those at issue in Counts IV-V and VII-IX) against SAP.  Because SAP had no injury or threat of injury when it filed *SAP DJ II*, there is no case or controversy justifying

---

[6] SAP has been able to review many if not all of the documents it identifies in its new complaint yet perplexingly continues to allege that it has not been able to do so.  *See* D.I. 2 at ¶¶25-27.

declaratory judgment jurisdiction over those counts, and they should be dismissed for lack of subject-matter jurisdiction.  *See Priority Healthcare Corp. v. Aetna Specialty Pharmacy, LLC*, 590 F. Supp. 2d 663, 667 (D. Del. 2008); Fed. R. Civ. P. 12(b)(1).

### B.    The Court Should Use its Discretion to Decline to Exercise Declaratory Judgment Act Jurisdiction Over Counts IV-XV

District courts retain discretion over whether to hear declaratory judgment actions, "even when the suit otherwise satisfies subject matter jurisdictional prerequisites."  *See Wilton v. Seven Falls Co.*, 515 U.S. 277, 281 (1995); *see also Ford Motor Co. v. United States*, 811 F.3d 1371, 1378 (Fed. Cir. 2016) (citation omitted).  The court must assess whether a declaratory judgment action comports with the Act's purpose of allowing "a party who is reasonably at legal risk because of an unresolved legal dispute[] to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side."  *Ford Motor Co.* 811 F.3d at 1378 (citation omitted). For this reason, anticipatory or duplicative declaratory judgment suits are often dismissed. *See Commc'ns Test Design, Inc. v. Contec, LLC*, 952 F.3d 1356, 1364 (Fed. Cir. 2020) (affirming dismissal of even first-filed declaratory judgment suit because it was "anticipatory" and "unjust" given the circumstances); *Care Corp.*, 344 F. Supp. at 16 n.2 ("[A court] should decline to entertain the [declaratory] action, for example, when the issue may more appropriately or effectively be resolved in another pending proceeding or where the declaratory judgment action is being used as a weapon in a game of procedural fencing.").

Here, there is no reason, consistent with the purposes of the Declaratory Judgment Act, to litigate any of the patent-related Counts (Counts IV-XV) in parallel with the parties' dispute in EDTX.

First, SAP's actions are inconsistent with the purpose of the Declaratory Judgment Act— it did not, for example, face a legal risk from Valtrus "because of an unresolved legal dispute."

*See Ford Motor Co.*, 811 F.3d at 1378. Rather, SAP filed this case months after Valtrus sued SAP in Texas, a forum in which SAP can litigate non-infringement of Valtrus's patents to the fullest extent permitted by law.

Second—as discussed throughout this brief—all of the typical considerations of whether a particular suit should proceed in a particular court counsel in favor of EDTX: EDTX has multiple suits from the same patent portfolio pending before it, there is no localized Delaware interest, Valtrus and SAP witnesses will in all likelihood need to travel to EDTX to litigate the EDTX case, and both parties' primary attorneys have offices in Texas (but not Delaware), necessitating the hiring of Delaware counsel.[7]

Thus, the court should decline to exercise jurisdiction and dismiss these counts for lack of subject-matter jurisdiction under Rule 12(b)(1).

### C.    The Court Should Dismiss or Transfer This Case Under the First-to-File Rule

"When two actions that sufficiently overlap are filed in different federal district courts, one for infringement and the other for declaratory relief, the declaratory judgment action, if filed later, generally is to be stayed, dismissed, or transferred to the forum of the infringement action." *Futurewei Techs., Inc. v. Acacia Rsch. Corp.*, 737 F.3d 704, 708 (Fed. Cir. 2013); *see also Contec, LLC*, 952 F.3d at 1362 (in parallel declaratory judgment and infringement action courts have "double dose" of discretion: "discretion to decline to exercise jurisdiction over a declaratory judgment action *and* discretion when considering and applying the first-to-file rule and its equitable exceptions.") (emphasis in original).

---

[7] SAP will likely make much of its pending motion to dismiss *Valtrus I* for lack of standing, contending that it will be the true first-filed case if J. Gilstrap grants that motion. However, the Court should not rely on SAP's speculations. Regardless, SAP should not be rewarded for running to the courthouse with another DJ, before filing its motion to dismiss in *Valtrus I* that highlighted its standing argument. Valtrus is the true plaintiff and the parties should be litigating in Valtrus's forum, regardless of SAP's numerous procedural maneuvers.

Valtrus filed *Valtrus I* in January, well before SAP filed this case.  *See* Ex. A (*Valtrus I* complaint).  The two actions sufficiently overlap because the key parties are the same, the accused products will be largely if not identical, and every patent asserted in *Valtrus I* is at issue in this case too.  *See Mobility Elecs., Inc. v. Am. Power Conversion Corp.*, 2007 WL 9724768, at *4 (E.D. Tex. Oct. 10, 2007) (noting "federal courts [] recognize the wisdom of allowing a judge who has familiarity with the subject matter at issue to preside over subsequent litigation").

Cases in both Delaware and Texas provide support for transferring this case under the first-to-file rule: "In an instance where related litigation in a transferee forum involves the same parties, similar technologies, and a common field of prior art, this Court has previously held that transfer is appropriate in the interests of justice." *Mallinckrodt, Inc. v. E–Z Em Inc.*, 670 F. Supp. 2d 349, 357–58 (D. Del. 2009); *Mobility Electronics*, 2007 WL 9724768 at *3-4.  Moreover, when the shoe has been on the other foot, Texas has deferred to the first-filed *Delaware* actions.  *See Samsung Elecs. Co. v. Netlist, Inc.*, 2022 WL 3027312, at *3 (D. Del. Aug. 1, 2022) (holding that, since the "Delaware case was filed before the Texas Action" the Delaware court should "take the lead"); *cf. Cisco Sys., Inc. v. Ramot at Tel Aviv Univ., Ltd.*, 2022 WL 16921988, at *3 (D. Del. Nov. 14, 2022) ("The first-filed case must conduct the first-filed-rule assessment.").

Texas is also a more convenient and appropriate forum for the parties to litigate.  SAP has an established place of business in Texas (and a pending motion to transfer *Valtrus I* to the Sherman Division), does considerable business there, and has litigated numerous patent cases there in the past, in some instances without even moving to transfer.  Berkowitz Decl. ¶3; Ex. A.  In contrast, Valtrus has never litigated in Delaware, has no physical or commercial presence in Delaware, and has never conducted any kind of business there.  Quinlan Decl. ¶¶6-7.  Further, the likely witnesses are not in Delaware, whereas at least some are in Texas, including potential third-

party HPE witnesses who could not be subpoenaed in Delaware.  Quinlan Decl. ¶11.  Similarly, HPE likely has relevant documents like invention records and possibly license agreements.

## II.  The Court Lacks Personal Jurisdiction Over Valtrus and KPI (Counts I-II and IV-XV).

On a motion challenging personal jurisdiction under Rule 12(b)(2), the plaintiff has the burden of establishing personal jurisdiction.  *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987).  SAP cannot meet its burden of establishing personal jurisdiction over Valtrus or KPI, which would require SAP to provide sufficient facts to establish defendant's jurisdictional contacts with the forum with "reasonable particularity."  *See id.*; *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).

### A.    The Court Lacks General Personal Jurisdiction Over Valtrus and KPI

SAP does not allege any facts supporting general personal jurisdiction over Valtrus or KPI in Delaware because there are none.  *See generally*, D.I. 2.  General personal jurisdiction requires substantial, continuous, and systematic contacts with the forum state.  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).  The "paradigm all-purpose forums" for general jurisdiction for a corporate defendant are its place of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137-38 (2014).  That is not the case here.  Valtrus and KPI are both Irish entities with their principal place of business in Ireland.  *See* D.I. 2 at ¶¶ 3-4; Quinlan Decl. at ¶¶3-4.  These facts preclude a finding of general personal jurisdiction over Valtrus.  *See, e.g.*, *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 502 (D. Del. 2017).

### B.    The Court Lacks Specific Personal Jurisdiction Over Valtrus and KPI

SAP alleges no facts to support specific personal jurisdiction under Delaware's long-arm statute or under Fed. R. Civ. P. 4(k)(2).  Neither applies, as Valtrus and KPI have not transacted business in Delaware and are already subject to personal jurisdiction in Texas given its other litigations there.  Moreover, SAP already knows all this—in connection with *SAP DJ I*, SAP

obtained written and document discovery from *both* Valtrus *and* KPI, and deposed both Ms. Quinlan and Ms. Kumar on all the same personal jurisdiction issues.

***Delaware's Long-Arm Statute***.  SAP has failed to allege any facts suggesting that Valtrus or KPI purposefully directed its commercial activities towards Delaware.  In relevant part, subsections (1)-(4) of the Delaware long-arm statute provide that a court may exercise personal jurisdiction over any nonresident who in person or through an agent:

> (1) Transacts any business or performs any character of work or service in the State;
> (2) Contracts to supply services or things in this State;
> (3) Causes tortious injury in the State by an act or omission in this State;
> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

Del. Code Ann. tit. 10, § 3104(c); *see Registered Agents, Ltd. v. Registered Agent, Inc.*, 880 F. Supp. 2d 541, 545 (D. Del. 2012).  Under this statute, SAP must plead facts showing that: (1) Valtrus and KPI purposefully directed its activities at Delaware; (2) SAP's claims arise out of or relate to at least one of Valtrus's/KPI's Delaware-related activities; and (3) the exercise of jurisdiction comports with the principles of fair play and substantial justice.  *See O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007).  SAP must adduce "specific facts"—not facts alleged "on information and belief"—indicating defendants directed conduct toward the forum state.  *See LaSala v. Marfin Popular Bank Pub. Co.*, 410 F. App'x 474, 477 (3d Cir. 2011). "[W]hat is necessary is a deliberate targeting of the forum." *O'Connor*, 496 F.3d at 317.

SAP's complaint fails on all accounts.  First, the complaint is devoid of any factual allegations tying Valtrus or KPI to Delaware or any suggestion that Valtrus or KPI aimed any activity at Delaware.  This is for good reason: there are no such facts.  As substantiated by Ms. Quinlan, Valtrus, and its parent, KPI, are Irish entities with their principal place of business in Dublin, Ireland. D.I. 2 at ¶¶3-4; Quinlan Decl. at ¶¶3-4.  Neither Valtrus nor KPI has U.S.

employees, and no board members reside in Delaware.  Quinlan Decl. at ¶¶5-6.  Neither company

is registered to conduct, or does conduct, business in Delaware.  *Id.* at ¶6.  Plus, unlike in Texas,

neither Valtrus nor KPI has filed any lawsuits in Delaware to enforce any legal rights of any kind.

*Id.* at ¶7.  Though Valtrus's parent (KPI) contracts with PPS (a Delaware corporation) to provide

licensing consulting services to Valtrus, PPS's principal place of business is in Frisco, Texas.  *See*

Kumar Decl. at ¶¶3, 5; *see also CLP Toxicology, Inc. v. Casla Bio Holdings*, *LLC,* 2020 WL

3564622, at *14 (Del. Ch. June 29, 2020) ("[C]ontracting with an entity that is incorporated within

a forum state does not provide necessary connections between the contract and the forum to

support a finding of jurisdiction.").  And all PPS employees responsible for any Valtrus licensing

activity, including preparing and presenting claim charts for and licensing the patents at issue,

reside in Texas, Pennsylvania, and New Jersey—not in Delaware.  Kumar Decl. at ¶5.  Finally, the

parties never met in Delaware.  Quinlan Decl. at ¶¶9-10; Kumar Decl. at ¶¶6-7.

Although the complaint parrots the language of statutes and case law (*e.g.*, alleging on

"information and belief" that Valtrus/KPI "purposefully availed itself of the privilege of doing

business in Delaware," D.I. 2 at ¶¶ 43, 44), it offers no facts or law in support.[8]  Instead, the only

non-conclusory Delaware-related allegation is that SAP America and PPS are Delaware-organized

entities, and that entities that own stock in KPI and PPS are formed in Delaware.  D.I. 2 at ¶37.

But it is black-letter law that the defendant's (Valtrus and KPI's) forum-state contacts control the

jurisdictional analysis, not the plaintiff's (SAP's).  *See Martinez v. Union Officine Meccaniche*

*S.P.A.*, 2023 WL 3336644, at *1 (3d Cir. May 10, 2023) ("[I]t is essential in each case that there

---

[8] SAP alleges on "information and belief" that personal jurisdiction is proper because Valtrus/KPI have negotiated licenses with companies that are incorporated and/or registered to do and currently conduct business in Delaware.  *See, e.g.*, D.I. 2 at ¶39.  Even if true, Defendants are aware of no law suggesting that this gives rise to personal jurisdiction.  Valtrus and KPI do not conduct business in Delaware and have not set foot in Delaware for any business purpose.

be some act by which *the defendant* purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." (emphasis added, citation omitted)).    Nor does PPS's status as a Delaware LLC somehow generate jurisdiction over Valtrus or KPI.  *See CLP Toxicology*, 2020 WL 3564622, at *14 ("[C]ontracting with an entity that is incorporated within a forum state does not provide necessary connections between the contract and the forum to support a finding of jurisdiction.") (citation omitted).  Nor does the state of incorporation of KPI's parent or investors yield jurisdiction over KPI or Valtrus; the location of parents or shareholders in a company does not on its own engender jurisdiction over the child company.  *See Lynch v. Gonzalez*, 2020 WL 3422399, at *6 n.61 (Del. Ch. June 22, 2020) ("Where a corporate child's only relation to Delaware is that its parent is domiciled here, . . . the exercise of personal jurisdiction by this State over the corporate child is improper"); *Eldon v. Brown*, 2010 WL 415317, at *2-3 (D.N.J. Jan. 29, 2010) ("A court with personal jurisdiction over a parent corporation does not, simply by virtue of the parent-subsidiary relationship, possess personal jurisdiction over the subsidiary company.").

Similarly, SAP's attempt to aggregate allegations of conduct concerning Valtrus and KPI with imprecise allegations concerning PPS "and/or other subsidiaries or agents" to establish long-arm jurisdiction has been rejected.  *See McDonough v. Gorman*, 2017 WL 3528846, at *3 (D. Del. Aug. 16, 2017) (rejecting "aggregation of co-defendants' forum contacts in determining personal jurisdiction") (citation omitted).  And SAP does not (because it cannot) allege that any of the other entities it references in the complaint have been involved in discussions with SAP or Valtrus's licensing efforts.  *See Reach & Assocs., P.C. v. Dencer*, 269 F. Supp. 2d 497, 504 (D. Del. 2003).

To be sure, SAP also alleges that PPS and Valtrus are "alter egos" of KPI and implies that KPI is subject to personal jurisdiction because both PPS and Valtrus are Delaware entities.[9]  But, SAP fails to allege any facts that would support such a finding.  "[I]n order to succeed on an alter ego theory of liability, plaintiffs must essentially demonstrate that in all aspects of the business, the [] corporations actually functioned as a single entity and should be treated as such."  *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 485 (3d Cir. 2001).  Moreover, in Delaware, a plaintiff must allege "an element of fraudulent intent in its alter ego test."  *Blair v. Infineon Technologies AG*, 720 F. Supp. 2d 462, 470 (D. Del. 2010) (*citing Trevino v. Merscorp, Inc.*, 583 F.Supp.2d 521, 528 (D. Del. 2008).  SAP does not come close to alleging sufficient facts with respect to PPS or Valtrus.  As for Valinvest, SAP alleges that KPI "has sole management authority over Valinvest" but offers no support.  D.I. 2 at ¶41.  Instead, SAP alleges that Kalpana Kumar (who, as SAP knows, is *not* a KPI employee or Board member, *see* Kumar Decl. at ¶4) is the sole Valinvest employee.  D.I. 2 at ¶41.  In any event, even if KPI had "sole management authority" over Valinvest, this does not make it an alter ego.

As for PPS, SAP alleges that it was created for the sole purpose of assisting and/or supporting KPI and/or Valtrus in licensing efforts, and that KPI approves, controls, and/or directs all related licensing communications and actions.  But even if true (which it is not), this does not make PPS an alter ego any more than SAP is an alter ego of its customers for whom it works and provides services.  In other words, SAP alleges little more than an ordinary service provider

---

[9] While not necessary for purposes of this motion, SAP took discovery and knows that its "alter ego" allegations are false.  PPS and KPI have *no* overlap in employees, office space, or anything else of note.  Two of the five Board members of KPI are PPS employees.  That's all there is, and it certainly does not make PPS an alter ego.  And, as SAP knows, Valinvest is owned by a publicly traded third-party, Burford Capital (NYSE: BUR).  Ex. F, p. 16:10-11.  Burford, via Valinvest, invested in Valtrus.  There are no facts that would suggest they are alter egos of each other.

relationship between KPI and PPS—as SAP itself separately alleges, "PPS acted as KPI's . . . licensing agent." D.I. 2 at ¶ 23. That does not make it an alter ego under any formulation of Delaware law.

What's more, recognizing its jurisdictional issues and the improbability of transferring the Texas case to Delaware, it should speak volumes that SAP initially moved to transfer the EDTX case from the Marshall Division to the Sherman Division, and separately offered to dismiss its Delaware case if Valtrus agreed to the intra-district transfer to the Sherman division (an offer that Valtrus rejected). If SAP thought that this Court had jurisdiction over the case, it would have moved to transfer its case to Delaware when *SAP DJ I* was pending.

***Fed. R. Civ. P. 4(k)(2)***. SAP also alleges that Rule 4(k)(2) gives this Court jurisdiction over Valtrus and KPI. D.I. 2 at ¶¶43-44. Not so. Rule 4(k)(2) allows a court to exercise personal jurisdiction over a defendant if "(1) the case arises under federal law and is not pending before the court pursuant to the court's diversity jurisdiction; (2) the foreign defendant lacks sufficient contacts with any single state to subject it to personal jurisdiction in any state; and (3) the foreign defendant has sufficient contacts with the United States as a whole to comport with constitutional notions of due process." *See Robert Bosch LLC v. Alberee Prods., Inc.*, 70 F. Supp. 3d 665, 680 (D. Del. 2014); *see also See M-I Drilling Fluids UK Ltd. V. Dynamic Air Ltda.*, 890 F.3d 995, 999 (Fed Cir. 2018).

Rule 4(k)(2) does not apply here because, under the second factor, Valtrus and KPI are subject to personal jurisdiction in Texas, making exercising jurisdiction under Rule 4(k)(2) improper. *See Robert Bosch LLC*, 70 F. Supp. 3d at 680 (Rule 4(k)(2) only applies where "the foreign defendant lacks sufficient contacts with *any* single state to subject it to personal jurisdiction in any state" (emphasis added)). Courts in Texas have jurisdiction over Valtrus and KPI because both have engaged in "enforcement activities" in that state and consented to jurisdiction there.

Quinlan Decl. ¶6; *see Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (the relevant inquiry is whether "the defendant patentee purposefully directed such *enforcement activities at residents* of the forum, and the extent to which the declaratory judgment claim arises out of or relates to those activities." (cleaned up, emphasis added)); *see also ACCO Brands USA LLC v. Performance Designed Prods. LLC*, 2024 WL 181545 at *3 (D. Del. Jan. 17, 2024) (Williams, J.) ("[T]he Federal Circuit has made clear that a declaratory judgment claim . . . 'arises out of or relates to the activities of the defendant patentee in enforcing the patent.'").

Additionally, many of the pre-litigation licensing discussions concerning the very patents-in-suit were conducted and led *in Texas* by a PPS employee, Kapu Kumar, on Valtrus's behalf. Kumar Decl. ¶6.   Accordingly, SAP's reliance on Rule 4(k)(2) fails.

***Due Process Concerns.***  Exercising personal jurisdiction over Valtrus and KPI in Delaware is also inconsistent with due process considerations.  The due process issue is analyzed through five factors: "(1) the burden on the defendant, (2) the forum's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the states in furthering fundamental substantive policies."  *See Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1417 (Fed. Cir. 2009).  But none of these factors supports personal jurisdiction in Delaware: (1) it is plainly burdensome on Valtrus and KPI to be litigating this declaratory judgment suit in Delaware when they are already litigating against SAP in EDTX; (2) Delaware has no unique interest in adjudicating this suit; (3) SAP could obtain the same relief in EDTX; (4) parallel related suits in different federal districts are not in the interest of the judicial system; and (5) there are no shared interests of substantive policy between Delaware and Texas.

Moreover, exercising jurisdiction over Valtrus would violate due process because Valtrus and KPI could not fairly foresee being hailed into Delaware federal court by merely attempting to

negotiate a license with SAP outside of Delaware. *See Apple Inc. v. Zipit Wireless, Inc.*, 30 F.4th 1368, 1374 (Fed. Cir. 2022) ("*Foreseeability . . . is critical to due process analysis*, and the Supreme Court has made clear that the focus is on whether a given defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." (cleaned up, emphasis added)). This is particularly so here because Valtrus and KPI have no connections to Delaware, are instead litigating in Texas, and are subject to jurisdiction there.

### C. SAP's State Law Claims Must Be Dismissed For Failure to State a Claim

Defendants move to dismiss SAP's state law claims under Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).[10] SAP's complaint asserts three state law claims all premised on purported consumer fraud: violation of the Delaware Consumer Fraud Act ("DCFA") against all defendants (Count I); civil conspiracy to violate the DCFA against all defendants (Count II); and aiding and abetting the alleged violation of the DCFA against PPS (Count III). D.I. 2. But the DCFA claim must be dismissed because no conduct took place in Delaware (let alone conduct that would be actionable under the statute), there is no effect in Delaware, and SAP's incorporation in Delaware is insufficient to bring a DCFA claim as a matter of law. And, without underlying consumer fraud, there can be no conspiracy and no aiding and abetting. In addition, a principal (*e.g.*, Valtrus or KPI) cannot conspire with its agent (PPS), so those claims must be dismissed too.

### D. The DCFA Claim Fails

The essence of SAP's DCFA claim is that Valtrus should have disclosed all confidential financial information that SAP wanted disclosed, and Valtrus's decision to not do so somehow amounted to illegal "concealment" (even though Valtrus had no duty to disclose such information

---

[10] Valtrus moves under Rule 12(b)(6) only in the alternative, in the event the Court denies Valtrus's motion under Rule 12(b)(2).

and in fact was contractually prohibited from doing so under third-party confidentiality obligations). *See, e.g.*, D.I. 2 at ¶¶ 50-52. Specifically, SAP alleges that Valtrus (1) "concealed the nature of Valtrus's agreements with HPE," (2) "concealed the nature of these licensing agreements" with other licensees; and (3) "conceal[ed] any consideration related to its patent portfolio from the prospective licensees." D.I. 2 at ¶¶ 24-26. SAP also suggests that the failure to offer "reasonable, good-faith licensing terms"—by which it appears to mean, at a price that SAP wants—is somehow unfair and violates the statute. D.I. 2 at ¶ 52.

Allowing SAP's allegations to proceed as claims of consumer fraud would vastly expand the reach of the Delaware statute and put routine licensing negotiations at risk of threatened litigation. Even more fundamentally, given the absence of any connection to Delaware or impact on consumers in the state, SAP lacks standing to bring this claim, has not plead fraud with sufficient particularity, and has failed to identify actionable tortious conduct.

### 1. SAP lacks statutory standing to assert a fraud claim with no connection to Delaware

It is black letter law that the DCFA only covers wrongdoing taking place in whole or in part within Delaware, and that it is the plaintiff's burden to plead as much. Indeed, the statutory scheme itself provides that the purpose of the DCFA is to protect "consumers and legitimate business enterprises from unfair or deceptive merchandising practices in the conduct of any trade or commerce *in part or wholly within this State* . . . ." *See Marshall v. Priceline.com Inc.*, 2006 WL 3175318, at *2 (Del. Super. Ct. Oct. 31, 2006) (quoting 6 Del. C. § 2512) (emphasis in original). The *Priceline* court was crystal clear about this: "there was no intent of the legislature to create any extraterritorial effects. As such, the courts have consistently ruled that the DCFA is only applicable if the fraudulent conduct occurs within Delaware." *Id.* (collecting cases). Further, merely organizing an entity in Delaware is not enough. *Id.* ("[W]hile incorporation may be enough

to allow Delaware law to apply to a dispute, it is not enough to allow the DCFA to apply to fraudulent transactions which did not occur in Delaware.").

Other Delaware decisions have consistently held the same as in *Priceline*. *See Nieves v. All Star Title, Inc.*, 2010 WL 2977966, at *4 (Del. Super. Ct. July 27, 2010) ("[A] DCFA claim is available only when at least some part of the defendant's alleged fraudulent conduct occurred in Delaware. A bare allegation that the defendant 'actively conducts business' in the state is insufficient to establish that the particular conduct forming the basis of the plaintiff's claim occurred in Delaware for purposes of the DCFA.").[11]

SAP's complaint fails to show that any defendant engaged in any purportedly wrongful conduct in Delaware. Thus, SAP lacks standing under the DCFA and the claim must be dismissed as to all defendants. *See Priceline*, 2006 WL 3175318, at *2 (resolving DCFA claim at the pleading stage because "the Plaintiffs must first demonstrate standing in accordance with the statute."). This simple fact alone is sufficient to resolve *all* of the state law claims since there can be no aiding or abetting or conspiracy absent an underlying DCFA violation.

### 2. SAP failed to plead its fraud claim with particularity under Rule 9(b)

Even if SAP had standing, which it does not, the DCFA claim must also be dismissed because it is not pled with particularity, as required by Rule 9(b), which requires that "the circumstances constituting fraud . . . be plead with sufficient particularity to place defendants on notice of the precise misconduct with which they are charged." *See Eames v. Nationwide Mut.*

---

[11] *See also Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 872 A.2d 611, 631 (Del. Ch. 2005), *partially rev'd on other grounds*, 901 A.2d 106 (Del. 2006) ("[R]elief can only be granted under the [Delaware] Consumer Fraud Act for unlawful practices occurring or performed partly or wholly within Delaware."); *Benning v. WIT Cap. Grp. Inc.*, 2001 WL 38781, at *2 (Del. Super. Ct. Jan. 10, 2001), *rev'd on other grounds*, 792 A.2d 188 (Del. 2001) (defendant was registered to do business within Delaware, but the plaintiff failed to establish the fraud took place within the State. As a result, the court determined the fraud claim was not appropriately brought before the Delaware Superior Court, pursuant to the DCFA.).

*Ins. Co.*, 2008 WL 4455743, at *13 (D. Del. Sept. 30, 2008) (cleaned up, citation omitted).  SAP's DCFA claim premised "upon information and belief" doesn't provide the "who, what, when, where, and how" with respect to the DCFA claim with any meaningful particularity.  *See United States v. Eastwick Coll.,* 657 Fed. App'x. 89, 93 (3d Cir. 2016).

SAP fails to identify a single fraudulent statement by Defendants.  *See U.S. ex rel. Tucker v. Nayak*, 2008 WL 140948, at *4 (S.D. Ill. Jan. 11, 2008) (dismissing fraud claim under Rule 9(b) because plaintiff "has not identified the date, amount, content of, or payment in connection with even a single false or fraudulent claim or statement"); *Abraham v. Am. Home Mortg. Servicing, Inc.*, 947 F. Supp. 2d 222, 231 (E.D.N.Y. 2013) ("[T]he second amended complaint does not specify a single fraudulent statement.").  SAP relies on claims of concealment of (*i.e.*, refusal to provide) purportedly relevant information—but even then, its conclusory allegations do not identify "what" specifically SAP alleges is a representation or statement by Valtrus that constituted actionable fraud, "where" this fraud occurred, or "how" the fraud was communicated.  *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326-27 (Fed. Cir. 2009).

For example, SAP states that Defendants' licensing offers "did not attempt to reflect the value of the patents Defendants identified based on any recognized form of valuation," (D.I. 2 at ¶ 52) but SAP fails to identify what it contends the true value of Valtrus's patents to be, what "recognized forms of valuation" it believes Defendants were required to use, or what information was concealed from SAP in this regard.  SAP also states that Defendants have not provided SAP with access to either its "Valtrus's (1) agreement(s) with HPE or (2) any purported benchmark license from a prior licensee." D.I. 2 at ¶52.  But what is concealed about this?  SAP knew it wasn't being provided these documents, and fails to allege any facts that would show that not providing this information was fraudulent.  *See Johnson v. Ace Cash Express Inc.*, 2015 WL 4397482, at *4 (D. Del. July 17, 2015) (dismissing DCFA claim under Rule 9(b) where plaintiff "failed to show

23

that Defendant had an obligation to disclose its business model and/or motivations to Plaintiff in connection with offering to do business with her."). Trying to leverage vague allegations like this into a fraud claim is exactly why Rule 9 requires pleading with particularity.

### 3. SAP's allegations do not constitute an actionable tort

The allegations here relate to routine, albeit failed, licensing negotiations. This is not the type of conduct contemplated by the DCFA—and to so hold would put innumerable licensing discussions and ordinary commercial transactions at risk of litigation. Valtrus and PPS had no duty to disclose the terms of the Valtrus patent purchase agreement with HPE or Valtrus's licensing terms with other licensees as a precondition to persuading patent infringers like SAP to secure a license, particularly when all of the information sought by SAP is subject to confidentiality restrictions. Likewise, to allow a claim that Valtrus did not offer "reasonable" licensing terms or did not "value" its patent portfolio the way SAP would like would dangerously expand the meaning of fraudulent concealment—this is simply a disagreement over price, thinly dressed as fraud. Should SAP's novel claim survive dismissal, every patent negotiation with a company that happens to be incorporated in Delaware is potentially subject to a DCFA claim. That cannot be the intent of the legislature and would have a chilling effect on all pre-litigation negotiations.

### E. SAP's Conspiracy and Aiding and Abetting Claims Fail to State a Claim

SAP's conspiracy claim alleges that Defendants knowingly agreed to violate the DCFA, and its aiding and abetting claim alleges that PPS assisted Valtrus and KPI in violating the DCFA. D.I. 2 at ¶¶54-63. Both these claims fail right out of the gate. SAP alleges that PPS "acted as KPI's and Valtrus's licensing agent." *See* D.I. 2 at ¶23. But this allegation defeats the claim because, as a matter of law, an agent can neither conspire with nor aid and abet its principal. *Largo Legacy Grp., LLC v. Charles*, 2021 WL 2692426, at *18 (Del. Ch. June 30, 2021) ("[L]ike civil conspiracy, officers and agents cannot aid and abet their principal or each other in the commission

of a tort."); *Amaysing Techs. Corp. v. Cyberair Commc'ns, Inc.*, 2005 WL 578972, at *7 (Del. Ch. Mar. 3, 2005) ("A corporation cannot conspire with itself any more than a private individual can"). "Accordingly, it is entirely sensible that, as a general rule, agents of a corporation cannot conspire with one another or aid and abet each other's torts." *Anschutz Corp. v. Brown Robin Cap., LLC*, 2020 WL 3096744, at *17 (Del. Ch. June 11, 2020). Thus, under SAP's own allegations, Counts II and III fail and must be dismissed.

Moreover, both conspiracy and aiding/abetting "require predicate tortious conduct" under Delaware law. *See Metro. Life Ins. Co. v. Tremont Grp. Holdings, Inc.*, 2012 WL 6632681, at *19 (Del. Ch. Dec. 20, 2012) (a conspiracy requires "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds . . . relating to . . . a course of action; (4) one or more unlawful acts; and (5) damages as a proximate result thereof") (citation omitted); *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2014 WL 6703980, at *23 (Del. Ch. Nov. 26, 2014) (an aiding and abetting claim requires "(i) underlying tortious conduct, (ii) knowledge, and (iii) substantial assistance"). SAP's DCFA claim is the predicate for its conspiracy and aiding/abetting claims. *See* D.I. 2 at ¶¶49-63. Thus, if the court dismisses the DCFA claim, the conspiracy and aiding/abetting claims should be dismissed too. *See MHS Cap. LLC v. Goggin*, 2018 WL 2149718, at *10, n.126 (Del. Ch. May 10, 2018) ("Because MHS's fraud claim fails, its claims for aiding and abetting and conspiracy to commit fraud must be dismissed as well.").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this motion to dismiss this case or, alternatively, to transfer it to the Eastern District of Texas.

Dated: August 28, 2024

Of Counsel:

Matthew G. Berkowitz - LEAD ATTORNEY
Patrick Colsher
Navid C. Bayar
Reichman Jorgensen Lehman &
Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, California 94065
Telephone: (650) 623-1401
mberkowitz@reichmanjorgensen.com
pcolsher@reichmanjorgensen.com
nbayar@reichmanjorgensen.com

Khue V. Hoang
Reichman Jorgensen Lehman & Feldberg LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Tel: (212) 381-1965
khoang@reichmanjorgensen.com

Respectfully submitted,

FARNAN LLP

/s/ Brian E. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Defendants*