## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SAP America, Inc. | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | **CIVIL ACTION NO. 24-cv-756-GBW** |
| | § | |
| Valtrus Innovations Ltd., Key Patent | § | |
| Innovations Ltd., and Patent Platform | § | |
| Services, LLC | § | **JURY TRIAL DEMANDED** |
| | § | |
| Defendants. | § | |

### DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 11; 19 U.S.C. § 1927; AND THE COURT'S INHERENT AUTHORITY

Dated: December 6, 2024

Of Counsel:

Matthew G. Berkowitz – LEAD ATTORNEY
Patrick Colsher
Navid C. Bayar
Reichman Jorgensen Lehman &
Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
mberkowitz@reichmanjorgensen.com
pcolsher@reichmanjorgensen.com
nbayar@reichmanjorgensen.com

Khue V. Hoang
Reichman Jorgensen Lehman &
Feldberg LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
khoang@reichmanjorgensen.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   SAP's Opposition Confirms That It Never Had a Factual or Legal Basis to Bring a DCFA Claim and That It Knew As Much From Day 1 ........................................................ 2

II.  SAP's Opposition Confirms That Its Re-Assertion of Personal Jurisdiction Over KPI and Valtrus After Taking Extensive Discovery Was Baseless ............................................ 5

    A.   SAP Confuses Basic Legal Concepts in its Application of Rule 4(k)(2). ............... 6

    B.   SAP Has No Reasonable Basis to Argue That KPI and Valtrus are "At Home" in Delaware. ......................................................................................................... 8

III. CONCLUSION ........................................................................................................... 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Avocent Huntsville Corp. v. Aten Int'l Co.*,
  552 F.3d 1324 (Fed. Cir. 2008)............................................................................................7

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*,
  582 U.S. 255 (2017).............................................................................................................9

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014).............................................................................................................9

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
  466 U.S. 408 (1984).............................................................................................................7

*MIG Invs. LLC v. Aetrex Worldwide, Inc.*,
  852 F. Supp. 2d 493 (D. Del. 2012).....................................................................................9

*Pharmachemie B.V. v. Pharmacia S.p.A.*,
  934 F. Supp. 484 (D. Mass. 1996) .......................................................................................8

*Sears, Roebuck & Co. v. Sears*,
  744 F.Supp. 1297 (D. Del. 1990).........................................................................................9

*Touchcom, Inc. v. Bereskin & Parr*,
  574 F.3d 1403 (Fed. Cir. 2009).......................................................................................7, 8

*Walden v. Fiore*,
  571 U.S. 277 (2014).........................................................................................................6, 7

**State Cases**

*Goodrich v. E.F. Hutton Grp., Inc.*,
  542 A.2d 1200 (Del. Ch. 1988)............................................................................................3

*Marshall v. Priceline.com Inc.*,
  2006 WL 3175318 (Del. Super. Ct. Oct. 31, 2006)...........................................................3, 4

*Nieves v. All Star Title, Inc.*,
  2010 WL 2977966 (Del. Super. Ct. July 27, 2010)...........................................................4, 5

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
  901 A.2d 106 (Del. 2006) ...............................................................................................1, 3, 4

**State Statutes**

An Act to Amendment Title 6, Delaware Code to Protect the Consumer Against
   Fraudulent and Deceptive Merchandising Practices, 55 Laws 1965, ch. 46
   (1965) .................................................................................................................................. 2

**Rules**

Fed. R. Civ. P. 4(k)(2) ........................................................................................ *passim*

Fed. R. Civ. P. 4(k)(2)(ii) ................................................................................................ 6

Fed. R. Civ. P. 11(c)(2) ................................................................................................ 10

Fed. R. Civ. P. 11(c)(4) .................................................................................................. 2

Advocacy" and "zeal" cannot justify SAP's repeated assertion of baseless claims. SAP's opposition confirms that it *never* had a basis to bring DCFA claims or to assert, after significant discovery, that the Court has personal jurisdiction over KPI and Valtrus.

First, SAP does not even argue that it ever had a good faith basis for thinking that any part of the alleged fraudulent transaction underlying its DCFA and related claims occurred *in Delaware*. That alone should warrant sanctions, even if SAP had only asserted the claim once (as opposed to three times). The statute requires that the fraudulent transaction occurred *"in part or wholly within this State [of Delaware]*," regardless of a party's place of incorporation. And, for decades, Delaware courts have consistently, and to Defendants' knowledge, without exception, rejected DCFA claims that lack such Delaware-based conduct. SAP only argues that its status as a Delaware-incorporated entity is enough, notwithstanding the fact that no court has ever so held, or even suggested that this is the law. In fact, the opposite is true; for example, the Delaware Supreme Court affirmed the dismissal of a DCFA claim brought by Wal-Mart, a *Delaware corporation*, on the grounds that the operative complaint did not allege Delaware-based fraudulent conduct. *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 901 A.2d 106, 117 (Del. 2006).

SAP's personal jurisdiction positions are similarly indefensible. Despite extensive discovery, SAP does not assert that either KPI or Valtrus, or even a related entity, has done anything in Delaware that is related to the claims in this case. Absent such relevant Delaware conduct, KPI and Valtrus cannot be subject to personal jurisdiction in this state.

SAP also doubles-down on a Rule 4(k)(2) argument that confuses two basic civil procedure concepts—personal and subject matter jurisdiction (i.e., Rule 4(k)(2)'s reference to "courts of general jurisdiction"). No case has ever endorsed SAP's view, or hinted as much. The bottom line is that (i) Valtrus sued SAP on patents-in-suit *in Texas* before this action, and (ii) Ms. Kapu Kumar,

on Valtrus's behalf, negotiated *with SAP* on the very patent portfolio at issue *from Texas* throughout 2023, making Defendants subject to personal jurisdiction in Texas. SAP does not dispute that it knew these facts *prior* to filing this lawsuit. Rule 4(k)(2) simply does not apply.

SAP should be sanctioned to deter this type of conduct. Upon the Court's Order, Defendants can submit an accounting of their incurred fees and expenses tied to SAP's sanctionable conduct. *See* Fed. R. Civ. P. 11(c)(4).

## I.      SAP's Opposition Confirms That It Never Had a Factual or Legal Basis to Bring a DCFA Claim and That It Knew As Much From Day 1.

The DCFA covers certain fraudulent conduct that occurred "in part or wholly within this State." This language has been part of the statutory framework since the Act was first passed in 1965. AN ACT TO AMEND TITLE 6, DELAWARE CODE TO PROTECT THE CONSUMER AGAINST FRAUDULENT AND DECEPTIVE MERCHANDISING PRACTICES, 55 Laws 1965, ch. 46 (1965). Delaware courts have routinely, and to Defendants' knowledge, without exception, held that DCFA claims cannot succeed without such Delaware-based fraudulent conduct. *See* Defs. Op. Br. (D.I. 39) at 12-13 (collecting cases).

In their Opening Brief, Defendants challenged SAP to provide the factual basis for its DCFA claims in response to this motion (if it had one), "for example in a declaration from a knowledgeable fact witness." *Id.* at 14. SAP offered nothing in response. It did not provide a declaration; any facts that might meet the DCFA's territorial requirement; or even explain a prior good faith (but mistaken) belief about Delaware-based conduct. Rather, SAP's only arguments are that: (1) it is incorporated in Delaware; and (2) Defendant KPI took actions in Delaware unrelated to the DCFA claims, such as forming Valinvest. Neither of these arguments has any merit.

***SAP's Place of Incorporation.*** SAP's place of incorporation is irrelevant to its DCFA claim. No case has ever held that a Delaware-based plaintiff can sidestep the statutory

geographical constraints. Nor does SAP advance any legal or policy reason as to why that should be the case; indeed, if that were the law, it would effectively render the statutory restriction meaningless, considering that approximately two-thirds of the Fortune 500 are incorporated in Delaware.

Further, Delaware courts have held that merely organizing an entity in Delaware is not enough for the statute to apply. *See, e.g., Marshall v. Priceline.com Inc.*, 2006 WL 3175318, at *2 (Del. Super. Ct. Oct. 31, 2006).[1] SAP acknowledges this settled law but argues that it does not apply if the *plaintiff* is incorporated in Delaware (as opposed to the Defendant). That is nonsensical—if a defendant "resides" in Delaware by virtue of its incorporation there, and this is "not enough" to demonstrate that part of the alleged fraudulent transaction occurred there, why would it be "enough" for a *plaintiff* to be incorporated there? A place of incorporation is not the same as the place where a fraudulent transaction occurred, regardless of whether it is the plaintiff's or defendant's place of incorporation.

Contrary to SAP's assertion, Delaware courts have already addressed this issue, even in the context of a plaintiff's residency. In *Wal-Mart Stores*, the Delaware Supreme Court affirmed the dismissal of a DCFA claim brought by Walmart, *a Delaware corporation*, explicitly because

---

[1] SAP argues that the *Priceline* case support its position, presumably because it commented on the residency of the putative class action plaintiffs. SAP's interpretation of this case is wrong; in *Priceline*, for example, the court explicitly held that Delaware incorporation is "not enough to allow the DCFA to apply to fraudulent transactions which did not occur in Delaware." 2006 WL 3175318, at *2. To the extent the *Priceline* court referenced the putative plaintiffs' residency in passing, it was because they were all *individuals*, and not corporations—after all, the DCFA is a *consumer* statute. *See also Goodrich v. E.F. Hutton Grp., Inc.*, 542 A.2d 1200 (Del. Ch. 1988) (same). A Delaware-resident individual who is defrauded may very well have been defrauded *in Delaware* by virtue of their physical presence there at the time of the conduct. The same is not true regarding a company's place of incorporation.

"[t]he Amended Complaint does not allege that any of the conduct at issue took place in Delaware." 901 A.2d at 117. SAP dismisses this case on the grounds that the insurance policies at issue (and that were subject to the DCFA claim) were "purchased in Georgia, by a trust Wal-Mart organized under Georgia law." D.I. 50 at 10. While it may have been true that the insurance policies were purchased in Georgia, the DCFA claim was brought by Wal-Mart, the *Delaware* entity and the grantor of the trust, on the grounds that "defendants made false and misleading representations that were intended to induce Wal-Mart [i.e., the Delaware entity] to act or to refrain from acting," and that, as a result of such false and misleading actions, "Wal-Mart [i.e., the Delaware entity] has suffered substantial losses." *See Wal-Mart's Amended Complaint*, 2003 WL 24210877 at ¶ 109, 112; *see also id.* at Complaint preamble (defining "Wal-Mart Stores, Inc.," the Delaware entity as "Wal-Mart," the allegedly aggrieved entity under the DCFA).

Further, in *Nieves v. All Star Title, Inc.*, 2010 WL 2977966 (Del. Super. Ct. July 27, 2010), the court dismissed a DCFA claim *by a Delaware resident* on the grounds that the "Complaint fails to set forth facts supporting that the alleged unlawful practices occurred wholly or partially in Delaware." *Id.* at *4. The court acknowledged the plaintiff's Delaware residency, but nevertheless dismissed the claim because the "allegations of consumer fraud relate to [Defendant's] provision of services in Maryland" and the "Complaint states no facts to support that [Defendant] provided services or made any misrepresentations or omissions in Delaware." *Id.* at *5. SAP tries to distinguish this case, too, arguing that the plaintiff "was using the DCFA as an attempt to fashion a private cause of action for the unauthorized practice of law." D.I. 50 at 9. This is true, but irrelevant, because the court ruled that the plaintiffs "DCFA claim fails for a number of reasons" and rested its decision on alternative holdings, including the lack of Delaware-based conduct. *Nieves*, 2010 WL 2977966 at *4.

*KPI's Alleged Conduct in Delaware.* SAP argues that other alleged conduct by KPI (not Valtrus or PPS) in Delaware, such as forming Valinvest, is enough to support its claim, or at least insulate it from sanctions, notwithstanding the fact that it has never taken this position before. But this alleged Delaware-based conduct by KPI has nothing to do with SAP's DCFA claim. *See* D.I. 2, ¶¶ 49-53. Rather, SAP alleged fraud is based on the parties' pre-litigation licensing negotiations. Nor is it plausible that KPI's alleged formation of Valinvest in Delaware could constitute a fraud against SAP—one thing has nothing to do with the other.

* * * *

It is worth repeating that SAP has now filed three separate DCFA claims—each one broader than the prior, and that SAP, as the counterparty in licensing discussions, had knowledge from Day 1 about the location of any allegedly fraudulent conduct. Moreover, SAP filed this case *after* Valtrus moved to dismiss *SAP Am., Inc. v. Valtrus Innovations Ltd., et al.*, 1:24-cv- 00054-GBW, D.I. 14 ("*SAP DJ I*"), laying out the reasons why the DCFA claim was baseless. SAP persisted, undeterred, all as part of a scorched-earth strategy that might expand the scope of discovery and add pressure on Defendants. Zealous advocacy is one thing. Repeated and knowing assertions of baseless claims in the face of decades of settled precedent is another. SAP should be sanctioned to deter this type of conduct in the future.

## II.   SAP's Opposition Confirms That Its Re-Assertion of Personal Jurisdiction Over KPI and Valtrus After Taking Extensive Discovery Was Baseless.

SAP's opposition confirms that it has no facts, even after discovery, demonstrating that KPI and Valtrus did anything in Delaware that might subject them to personal jurisdiction. SAP does not assert that KPI or Valtrus are headquartered or incorporated in Delaware, or that they have transacted relevant business, or caused an injury, in Delaware, per the provisions of the Delaware long-arm statute. Rather, SAP (i) doubles-down on a frivolous interpretation of Rule 4(k)(2), and

(ii) argues that KPI and Valtrus are "at home" in Delaware because they are related to, or have contracts with, Delaware-incorporated entities. Both of SAP's positions are objectively baseless under the law, and yet again confirm that this case should never have been filed.

**A.    SAP Confuses Basic Legal Concepts in its Application of Rule 4(k)(2).**

Ms. Kapu Kumar was the lead pre-litigation negotiator with SAP for the Valtrus patent portfolio, a portion of which is at issue in this lawsuit. *SAP DJ I*, D.I. 18, ¶¶ 5-6. She negotiated for many months *from Texas*. *Id.* SAP negotiated against her and knew that she was based in Texas. Moreover, prior to filing this lawsuit, Valtrus sued SAP *in Texas* on patents at issue in this case. SAP acknowledges all of this, but calls these facts "irrelevant to the Rule 4(k)(2) negation requirement because specific personal jurisdiction in declaratory judgment cases focuses on the extent to which the '***defendant patentee*** purposefully directed ***such enforcement activities at residents of the forum*** . . . '" D.I. 50 at 11-12 (emphasis in original). SAP's argument is wrong, as set out below.

As SAP notes, extensively directing enforcement activities at residents of a forum can subject an entity to personal jurisdiction in that forum.[2] But that is, of course, not the *only* way that an entity, patentee or otherwise, can subject themselves to personal jurisdiction in a given state. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (internal quotation marks omitted). In other words, the inquiry is not about actions directed towards the plaintiff; the inquiry concerns *the forum*, and the connection of the forum to the claims in the litigation. One of the ways that a Defendant can make

---

[2] SAP argues that these enforcement activities do not count because Valtrus did not own all substantial rights at the time of suit. SAP cites no authority that contacts vanish into thin air if a Court dismisses a case. Enforcement activities are enforcement activities, regardless of how many rights Valtrus had at the time it brought suit.

contact with a state is through "physical entry into the State." *Id.* at 285. Here, Defendants directed their activities *at Texas*, via both affirmative litigation, and Ms. Kumar's licensing efforts while she was physically present.

SAP is simply wrong that declaratory judgment actions are handled differently from a personal jurisdiction perspective. It just so happens that in most declaratory judgment cases, the forum and the residency of the plaintiff are one in the same, meaning that courts, such as in *Avocent Huntsville Corp. v. Aten Int'l Co.*, sometimes talk about them together. 552 F.3d 1324, 1332 (Fed. Cir. 2008). But even *Avocent* recognizes that the inquiry must remain focused on the defendant's contacts with *the forum*. *Id.* at 1330-31 (collecting and synthesizing Supreme Court cases); *see also Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) ("due process is not offended . . . when there are sufficient contacts *between the State and the foreign corporation*.") (citations omitted) (emphasis added). Indeed, it would be an odd result if a patentee with large offices and extensive licensing operations based out of a state was not subject to specific personal jurisdiction there on claims tied to its licensing business just because the declaratory judgment plaintiff was resident elsewhere. Accordingly, Ms. Kumar's licensing activities, and Valtrus's lawsuit on asserted patents, are hardly irrelevant facts. They negate the application of Rule 4(k)(2).

SAP also doubles-down on its prior argument that the negation requirement of Rule 4(k)(2) is not met unless a defendant is subject to general (as opposed to specific) personal jurisdiction. As Defendants explained in their opening brief, SAP's argument confuses personal and subject matter jurisdiction. Op. Br. at 15-16. The Rule 4(k)(2) negation requirement only concerns where else "the plaintiff could have brought suit." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009). This is a personal jurisdiction test, including both specific and general

personal jurisdiction.  *Id.*; *see also Rule 4(k)(2), Advisory Committee Notes, 1993 Amendment, Subdivision (k)* ("Paragraph (2) . . . authorizes the exercise of territorial jurisdiction over the person of any defendant against whom is made a claim arising under any federal law if that person is subject to personal jurisdiction in no state.").  On the other hand, the language in Rule 4(k)(2) reciting a "state's courts of general jurisdiction" refers to a court that can hear any type of matter (as opposed to courts of limited jurisdiction, like federal courts).  *See* Op. Br. (D.I. 39) at 15-16 (collecting and explaining cases).  SAP's attempts to distinguish the entire body of federal court jurisprudence concerning the difference between personal and subject matter jurisdiction are unpersuasive—Rule 4(k)(2) does not turn on whether the case is limited to patent claims or whether it was initiated via declaratory judgment.

SAP nevertheless asserts that a 1996 Massachusetts district court case supports its position. *Pharmachemie B.V. v. Pharmacia S.p.A.*, 934 F. Supp. 484, 488 (D. Mass. 1996).  Putting aside the fact that the Supreme Court and Federal Circuit have already explained these jurisdictional concepts, this decision does not support SAP's position.  To the contrary, the court in *Pharmachemie* specifically held that the language "courts of general jurisdiction of any state" refers to the types of cases that a court can hear—not a type of personal jurisdiction.  *Id.*  The question in the case was about whether the courts of the District of Columbia qualified as "courts of general jurisdiction of any state," a question particular to the District of Columbia that is not at issue here.  *Id.*  As for whether the negation requirement was met, the district court analyzed the long-arm statutes of Ohio and New Mexico, each of which includes specific personal jurisdiction provisions.  *Id.* at 487.

## B.  SAP Has No Reasonable Basis to Argue That KPI and Valtrus are "At Home" in Delaware.

SAP argues that KPI and Valtrus are "at home" in Delaware because the "whole of the KPI-

Valtrus corporate structure is centrally organized in Delaware[.]" D.I. 50 at 16. Even if true, which it is not, this is irrelevant. *See, e.g.*, *Daimler AG v. Bauman*, 571 U.S. 117, 136 (2014) ("Even if we were to assume that MBUSA [the subsidiary or agent] is at home in California, and further to assume that MBUSA's contacts are imputable to Daimler [the parent or principal], there would still be no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there."). *See also* D.I. 31 at 7-8; D.I. 39 at 17-18 (collecting cases). What matters here is whether the sister entity or alleged agent was undertaking any of the activities enumerated in Section 3104 of the Delaware long-arm statute, in Delaware. *See* Op. Br. (D.I. 39) at 16-17 (collecting and explaining cases). Here, it is undisputed that they were not, and that SAP knew this after taking discovery.

SAP also introduces a new argument, specific to KPI—that KPI incorporated Valinvest, and that this is an "affirmative act taken by KPI in Delaware." D.I. 50 at 19. Even if true, incorporation of Valinvest (an investor), has nothing to do with the claims in this case and therefore cannot subject KPI (let alone Valtrus) to personal jurisdiction here. *See Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017) ("In order for a state court to exercise specific jurisdiction the suit must arise out of or relate to the defendant's contacts with the forum.") (citations omitted) (cleaned up). As the cases that SAP cites say, the act of incorporating a subsidiary confers "personal jurisdiction . . . for causes of action *related to that act of incorporation*." *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1303 (D. Del. 1990) (emphasis added); *MIG Invs. LLC v. Aetrex Worldwide, Inc.*, 852 F. Supp. 2d 493, 504 (D. Del. 2012) (similar). This is a patent case—incorporation of an investment vehicle that has no ownership or other rights in the patents is legally irrelevant (which is likely why SAP did not make this argument in response to Defendants' motion to dismiss).

9

### III.    CONCLUSION

Sanctions are warranted.  SAP's claims and arguments—presented by sophisticated counsel—were knowingly baseless.  And, worse, SAP re-asserted the DCFA and related claims on three separate occasions, expanding them each time.  Indeed, its frivolous positions are the pillar on which this case exists, and have both driven up litigation costs and wasted the Court's resources. Upon an Order granting this motion, Defendants can submit an accounting of their fees and expenses tied to responding to SAP's frivolous claims, as well as for bringing this motion.[3]

---

[3] Pursuant to Fed. R. Civ. P. 11(c)(2), Defendants served SAP with their sanctions motion more than 21 days before filing.  SAP refused to withdraw any claims.  Accordingly, Defendants should receive fees and costs associated with this motion, as well as other fees and costs associated with responding to SAP's sanctionable conduct.

Dated: December 6, 2024

Of Counsel:

Matthew G. Berkowitz – LEAD ATTORNEY
Patrick Colsher
Navid C. Bayar
Reichman Jorgensen Lehman &
Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Telephone: (650) 623-1401
mberkowitz@reichmanjorgensen.com
pcolsher@reichmanjorgensen.com
nbayar@reichmanjorgensen.com

Khue V. Hoang
Reichman Jorgensen Lehman &
Feldberg LLP
400 Madison Avenue, Suite 14D
New York, NY 10017
Telephone: (212) 381-1965
khoang@reichmanjorgensen.com

Respectfully submitted,

FARNAN LLP

*/s/ Michael J. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market Street, 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Defendants*

11